AKIYO GIBBS *et al.*, Plaintiffs-Appellants, v. MADISON MUTUAL INSURANCE COMPANY, Defendant-Appellee (Danny Gibbs, Plaintiff).
Fifth District   No. 5—91—0547

Opinion filed March 10, 1993.

Gordon Lambert, of Harris & Lambert, of Marion, for appellants.

Larry E. Hepler, J. Todd Hayes, and David G. Phoenix, all of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, and James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Akiyo Gibbs, Faye Greer, Alisa Gibbs, a minor, by Akiyo Gibbs, her mother and next friend, Tia Gibbs, a minor, by

Akiyo Gibbs, her mother and next friend, and Kristina Brooke Horton, a minor, by Clark Horton and Gina Horton, her father and mother and next friends, appeal from a declaratory judgment of the circuit court of Massac County in favor of defendant, Madison Mutual Insurance Company, barring plaintiffs from stacking the bodily injury and underinsured motorist coverages on each of the four vehicles insured under a policy owned by Danny Gibbs, another plaintiff, who takes no part in this appeal. The declaratory judgment also provided that any payments made to plaintiffs under the bodily injury liability coverage should be reduced (set off) by any payments due and owing plaintiffs under the underinsured motorist provisions, and that any payments made to plaintiffs under the underinsured motorist provisions should set off any payment due and owing under the bodily injury liability provisions. In this cause there are two areas we must address—the antistacking provisions in the policy and the setoff provision in the policy. More specifically, the issues presented are: (1) whether the antistacking clauses in the policy in question bar stacking of the bodily injury liability coverages and the underinsured motorist coverages on the four motor vehicles insured under the policy, and (2) whether defendant is entitled to set off what it pays on behalf of the policy owner, Danny Gibbs, under the bodily injury liability section of the policy against what it owes under the underinsured motorist provision of the policy and whether defendant is entitled to set off what it pays under the underinsured motorist provisions of the policy to any plaintiff against what it owes under the bodily injury liability sections of the policy. We reverse and remand.

I

The facts are not in dispute. Defendant issued Danny L. Gibbs a policy of motor vehicle liability insurance, policy No. 00479725, which was effective from June 20, 1988, to December 20, 1988. There were four automobiles covered under policy No. 00479725: a 1986 Lincoln Town Car, a 1982 Dodge 400, a 1987 Chevrolet Spectrum, and a 1976 GMC half-ton pickup. Each automobile under the policy carried coverage of $100,000 per person and $300,000 per accident for bodily injuries. The underinsured coverage under the aforementioned policy also set limits at $100,000 per person and $300,000 per accident for each automobile. The premium was broken down as follows: a premium of $159.45 was required for coverage on the 1986 Lincoln, $267.20 was required for the 1982 Dodge 400, $171 was required for the 1987 Chevrolet Spectrum, and $96.40 was required for the 1976 GMC half-ton pickup. Policy No. 00479725 also contained antistacking

provisions under "Part A—liability coverage" and "Part D—underinsured motorists coverage."

On September 11, 1988, Danny Gibbs was driving the Lincoln Town Car on Illinois Route 145 in Massac County when a collision occurred between his automobile and an automobile driven by Patrick Burkhart. Passengers in the Gibbs automobile are the other plaintiffs in this suit. At the time of the collision, Patrick Burkhart was insured by State Farm Mutual Insurance Company with policy limits of $30,000 per person and $100,000 per accident for bodily injuries. State Farm has tendered its policy limit of $30,000 to Akiyo Gibbs. The parties stipulated that Akiyo Gibbs, Faye Greer, Alisa Gibbs, Tia Gibbs and Kristina Brooke Horton each sustained some personal injuries arising out of the collision between Danny Gibbs and Patrick Burkhart. Plaintiffs' amended complaint for declaratory judgment states that Akiyo Gibbs sustained injuries and damages in an amount in excess of $800,000.

Suit for declaratory judgment was filed by plaintiffs. The case was tried without a jury. Plaintiffs took the position that policy No. 00479725 provides $100,000 coverage on each of the four vehicles for a total of $400,000 per person bodily injury coverage and a total of $400,000 per person underinsured motorists coverage. According to plaintiffs, the underinsured motorist coverage is available to them because Patrick Burkhart is an underinsured motorist. Plaintiffs concede that any payments made by Burkhart's insurance company to any plaintiff may be offset against the total underinsured motorist coverage available to that plaintiff. Defendant took the position that only $100,000 is available under the policy as bodily injury liability coverage as to each plaintiff and, likewise, that only $100,000 is available under its policy for each plaintiff as underinsured motorists coverage. As to the setoff issue, defendant argued that it is entitled to a credit against underinsured motorist coverage payments due under the policy to any one plaintiff for any payment made to that plaintiff under the bodily injury provisions of the policy. Defendant also argued it was entitled to a credit against any payment due under its bodily injury liability coverage to any plaintiff for any payment made under its policy to that plaintiff under the underinsured motorists provisions of the policy. The trial court agreed with defendant's position and held as follows:

"1. That Madison Mutual Insurance Company's Policy No. 00479725, issued to Danny L. Gibbs, was in full force and effect on September 11, 1988, and provided insurance coverage for four motor vehicles, to-wit: 1982 Dodge, 1987 Chevrolet

Spectrum, 1976 GMC ½ ton truck and 1987 Lincoln automobile, and as such provides bodily injury liability coverage for all plaintiffs, Akiyo Gibbs, Faye Greet [sic], Alisa Gibbs, Tia Gibbs and Kristina Brook [sic] Horton, against Danny L. Gibbs, for personal injuries sustained by them arising out of a motor vehicle accident on September 11, 1988, in the amount of $100,000 per individual and not to exceed a total for said occurrence of $300,000.00.

2. That Madison Mutual Insurance Company's Policy No. 00479725, issued to Danny L. Gibbs, was in full force and effect on September 11, 1988, and provided insurance coverage for four motor vehicles, to-wit: 1982 Dodge, 1987 Chevrolet Spectrum, 1976 GMC ½ ton truck and 1987 Lincoln automobile, and as such provides underinsured motorist coverage for all plaintiffs, Akiyo Gibbs, Faye Greet [sic], Alisa Gibbs, Tia Gibbs and Kristina Brook [sic] Horton, against Danny L. Gibbs, for personal injuries sustained by them arising out of a motor vehicle accident on September 11, 1988, in the amount of $100,000.00 per individual and not to exceed a total for said occurrence of $300,000.00.

3. That any payments made to any of the plaintiffs, Akiyo Gibbs, Faye Greet [sic], Alisa Gibbs, Tia Gibbs and Kristina Brook [sic] Horton, Under Part A—Bodily Injury Liability Coverage shall reduce any payment that might be due and owing to any of them under Part D—Underinsured Motorist Coverage.

4. That any payments made to any of the plaintiffs, Akiyo Gibbs, Faye Greet [sic], Alisa Gibbs, Tia Gibbs and Kristina Brook [sic] Horton, under Part D—Underinsured Motorist Coverage, shall reduce any payment that might be due and owing to any of them under Part A—Bodily Injury Liability Coverage."

Plaintiffs, excluding Danny Gibbs, now appeal the trial court's decision.

## II

The first issue we are asked to consider is whether the antistacking clauses of the policy in question bar stacking of the bodily injury liability coverages and the underinsured motorists coverages on the four motor vehicles insured under the policy. Plaintiffs contend that the antistacking clauses are not applicable to the facts in this case and thus they should be allowed to stack both the bodily

injury and underinsured motorists provisions. Defendant replies that the language of the policy clearly and unambiguously prohibits stacking of policy coverages in all situations, including the one presented here. We find the antistacking provisions to be ambiguous and, under the facts presented, believe that the coverages may be stacked.

■ When construing insurance policies, the agreement is to be enforced as written so long as it is unambiguous and only to the extent that it does not contravene public policy. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.) Section 143a—2(6) of the Illinois Insurance Code (the Code) provides that an insurer is not prohibited from including antistacking provisions in motorists' policies (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(6)). That section of the Code is essentially a codification of that portion of *Menke* which holds antistacking provisions are not *per se* violative of public policy. (78 Ill. 2d at 425, 401 N.E.2d at 539.) However, it remains that if any provision in the policy is ambiguous, such ambiguity must be construed in favor of the insured. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 180, 370 N.E.2d 1044, 1049; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250.) In determining whether there is an ambiguity, the provision must be read in its factual context and not in isolation. (57 Ill. 2d at 336, 312 N.E.2d at 250.) An examination of the clause at issue reveals an ambiguity.

The antistacking provisions under scrutiny here are found in both the liability and the underinsured motorists sections of the policy. Both provisions are identical and read as follows:

"LIMIT OF LIABILITY

\*\*\* If two or more vehicle liability policies issued by **us** to **you** apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability, and The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each **person** injured in any one accident: This is the most **we** will pay regardless of the number of:

1. **Insureds;**
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident."

The first clause of this provision clearly states that this provision to limit liability only comes into play "if two or more vehicle liability policies" are issued to the insured. Defendant asks us to construe the

second clause as independent of the first clause in order to limit its liability. Defendant contends that the first provision of section A addresses multiple policies while the second provision addresses multiple automobiles insured under one policy and that neither provision is contingent upon the application of the other. We disagree, however, that the provision is clear and unambiguous.

The provision, as written, is only one sentence, not two separate paragraphs. The first clause ends with a comma and the word "and" followed by a second clause. In such a situation, we believe plaintiffs' interpretation is reasonable. In our estimation, if these two clauses were two separate paragraphs, or even two separate sentences, there would be a period after the word "liability" and the word "and" would not appear. As written, however, there is one continuous sentence.

■ Plaintiffs contend that the first clause starting with "If two or more vehicle liability policies" and ending with "the highest limit of liability" is a qualifying phrase. In order for the second phrase to come into play, the first qualification must be fulfilled, namely, two policies must be issued. Because only one policy was issued in the instant case, this antistacking provision does not come into play. We agree. Here, it is apparent that the antistacking clause can be read in more than one way. When an insurer attempts to limit its liability within a policy, such limitation must be construed liberally in favor of the policy holder and against the insurer. (*Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d at 180, 370 N.E.2d at 1049.) Because there are at least two ways to read the "LIMIT OF LIABILITY" provision within this policy, the provision must be construed in favor of the insured. We hold that plaintiffs may stack the bodily injury liability coverage under part A of the policy for a total of $400,000 per person or $1.2 million per occurrence as well as the underinsured motorists coverages under part D of the policy.

### III

The second issue we are asked to address concerns setoff. Specifically, we are asked to consider whether defendant is entitled to set off what it paid on behalf of the policy owner, Danny Gibbs, under the bodily injury liability section of the policy against what it owes under the underinsured motorist section of the policy and, likewise, whether defendant is entitled to set off what it pays under the underinsured motorists section of the policy to any plaintiff against what it owes under the bodily injury liability section of the policy. Plaintiffs submit that no setoff of either kind should be allowed for payment under the

bodily injury section or for payment under the underinsured motorists section, as the two are completely different methods of recovery. Defendant replies that its policy specifically provides for setoff of any payment under the policy's underinsured motorists coverage from any payments made under this policy's bodily injury provisions and any other policy as well as for a setoff of any payments under the policy's bodily injury provisions from any payments which may be due and payable under the policy's underinsured motorists provisions. We agree with plaintiffs.

■ Section 143a—2(3) of the Code defines an underinsured motor vehicle as one whose ownership, maintenance or use has resulted in bodily injury or death to the insured, and for which "the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security" maintained by the person responsible for the vehicle is less than the limits of underinsured coverage provided the insured under his policy at the time of the accident. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).) Section 143a—2(3) then addresses the insurer's liability:

> "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the *underinsured* motor vehicle." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).)

There is no question that plaintiffs' recovery under the underinsured portion of the instant policy is to be offset by the $30,000 paid by Patrick Burkhart's insurance company. Plaintiffs have conceded as much. But we do not believe that defendant is entitled to any other setoffs.

■ The General Assembly's intent in enacting section 143a—2(3), the underinsured motorist provision, is to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. (*Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 555, 591 N.E.2d 427, 429.) Likewise, the purpose behind the statutorily mandated uninsured motorist provision, section 143a—2(4), is to place the insured in substantially the same position as if the wrongful uninsured driver had been minimally insured. (*Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4, 269 N.E.2d 295, 297; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 335, 312 N.E.2d 247, 250.) Recently, our supreme court considered a case similar to the instant case, except that the drivers of the other automobiles were uninsured motorists rather than under-

insured motorists. (*Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272, 592 N.E.2d 1031.) We look to *Hoglund* for guidance in the instant matter and apply its reasoning to the case at bar.

In *Hoglund*, two cases were consolidated on appeal. Both the plaintiffs were passengers in uninsured automobiles whose drivers collided with another. In each case, the drivers of both vehicles were at fault. The other vehicles each had $100,000 bodily injury limits, and both the plaintiffs allegedly suffered injuries over $200,000. In both cases, the plaintiffs collected the policy limits of $100,000 from the drivers of the insured vehicles and then sought their own uninsured motorist coverage policy limits of $100,000. The uninsured motor vehicle policies issued to the plaintiffs by the defendant included setoff and subrogation provisions which the defendant argued supported a setoff. The defendant argued it was entitled to a setoff of $100,000 in both cases because of the $100,000 bodily injury limits recovery received from the drivers of the insured automobiles. The defendant claimed it owed the plaintiffs nothing. The *Hoglund* court disagreed with the defendant, holding that under both the policy provision and the statute the insurance company was entitled to a setoff for uninsured motorist coverage only to the extent necessary to prevent double recovery. 148 Ill. 2d at 280-81, 592 N.E.2d at 1035.

The *Hoglund* court reasoned that a literal interpretation of the limits-of-liability language in the policies indicated that uninsured motorist coverage should be reduced by any amount paid the insured by any other party. But, because a premium had been paid for uninsured motorist protection, if such protection was not given, the policy holder would be denied substantial economic value in return for the premiums which it paid. (148 Ill. 2d at 278, 592 N.E.2d at 1034.) The *Hoglund* court also pointed out that to allow the insurer to set off the $100,000 paid by the other driver would frustrate the public policy behind the uninsured motorist statute:

> "If, for instance, the uninsured motorcycle driver had been insured for $100,000, Miss Hoglund could have collected that sum in full from that driver's insurer, along with the $100,000 she collected from the other insured driver. The separate collections of $100,000 from each of the two culpable drivers would have fully compensated her for her $200,000 in damages. State Farm's position, however, is to insist that it receive a full setoff for the payment made on behalf of the insured driver. Such a result would violate the public policy behind the uninsured motorist statute that the injured party be placed in the same posi-

tion as if the uninsured driver had been insured. Additionally, the insurance policies at issue were intended to provide coverage for damages caused by uninsured motorists. To allow a literal interpretation of the policy language would nullify the coverage intended by the policies. Further, to endorse State Farm's interpretation of the setoff provision would deny the policyholder substantial economic value in return for the payment of premiums. That is to say, the insured would be denied the very insurance protection against uninsured motorists for which he had paid premiums. Thus, because the setoff provision at issue is subject to a second reasonable interpretation when viewed in light of the above extrinsic evidence, the provision is ambiguous. Under Illinois law, any ambiguity in an insurance policy must be construed in favor of coverage for the insured. [*Allstate Insurance Co. v. *]*Elkins* [(1979)], 77 Ill. 2d [384,] 390-91[, 396 N.E.2d 528]." 148 Ill. 2d at 280, 592 N.E.2d at 1035.

Here, the underinsured motor vehicle provisions included a setoff provision:

"B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and Part B, and

2. Paid or payable because of the bodily injury under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A, and Part B."

The *Hoglund* court pointed out that such exculpatory language cannot be read in isolation but must be read in conjunction with the policy holder's reasonable expectations along with the public policy behind the statute and the coverage intended by the insurance policy itself. (148 Ill. 2d at 279, 592 N.E.2d at 1034.) Here, as in *Hoglund*, when this is done, a latent ambiguity in the policy language is disclosed.

For purposes of this discussion, we assume both drivers were at fault. Danny Gibbs had bodily injury limits of $100,000/$300,000 which we have determined may be stacked together. Danny Gibbs also had underinsured motorist coverage in an equal amount. Thus, under section 143a—2(3) of the Code, there is no way Danny Gibbs can be an underinsured driver. Plaintiffs seek to recover under the policy issued

to Danny Gibbs for bodily injury coverage because of Danny Gibbs' degree of fault in the accident. Additionally, plaintiffs seek to recover under the policy issued to Danny Gibbs because of Patrick Burkhart's status as an underinsured driver. Plaintiffs are correct that recovery under "Part A—Liability Coverage" is separate and distinct from "Part D—Underinsured Motorist Coverage." Relying on *Hoglund*, we conclude that defendant is entitled to a setoff under the underinsured motorists provisions only for the $30,000 paid by Patrick Burkhart's insurance company.

For the foregoing reasons, the judgment of the circuit court of Massac County is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CHAPMAN, P.J., and WELCH, J., concur.