HARRY LUECHTEFELD, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 5—93—0505

Opinion filed October 31, 1994.

Harriet H. Hamilton, of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellant.

John B. Gunn and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, Harry Luechtefeld, was injured in an accident involving his motorcycle and a car driven by an uninsured motorist. Plaintiff owned the motorcycle and had insured it with Pekin Insurance Company (Pekin). The insurance policy with Pekin included uninsured-motorist coverage, with limits of $20,000 per person and $40,000 per accident. Plaintiff also had an insurance policy issued to him by defendant, Allstate Insurance Company, which provided coverage for three other vehicles owned by plaintiff, for an "87 Carvn," a "77 Star," and an "86 Escrt." Under the policy issued to plaintiff by defendant, plaintiff had uninsured-motorist coverage with limits of $100,000 per person and $300,000 per accident.

Plaintiff settled his accident claim with Pekin for the limits of his uninsured-motorist coverage under that policy, i.e., for $20,000. Subsequently, he filed a claim against defendant under Allstate's uninsured-motorist provision. After Allstate denied his claim, plaintiff filed a declaratory judgment action and claimed that the uninsured-motorist provision in the policy issued to him by defendant was ambiguous. Plaintiff and defendant filed cross-motions for summary judgment. The trial court held that plaintiff's motorcycle was not covered by the policy issued to him by defendant, granted summary judgment for defendant, and denied plaintiff's motion. Plaintiff appeals.

Plaintiff contends that the court erred in finding that the language of the insurance policy issued by defendant to him was not ambiguous and that the exclusionary provision in the policy was violative of public policy. We first address plaintiff's contention that the court erred in finding that the language of the insurance policy issued by defendant was unambiguous.

Generally, the law for construing insurance policies is that these matters are a question of law that a reviewing court can consider *de novo*. (*Murphy v. State Farm Mutual Automobile Insurance Co.* (1992), 234 Ill. App. 3d 222, 225, 599 N.E.2d 446, 448.) The agreement is to be enforced as written so long as it is unambiguous and only to the

extent that it does not contravene public policy. (*Gibbs v. Madison Mutual Insurance Co.* (1993), 242 Ill. App. 3d 147, 152, 610 N.E.2d 143, 147.) The main purpose is to ascertain and effectuate the intent of the parties. (*Murphy*, 234 Ill. App. 3d at 225, 599 N.E.2d at 448.) In determining whether there is an ambiguity, the provision must be read in its factual context and not in isolation. (*Gibbs*, 242 Ill. App. 3d at 152, 610 N.E.2d at 147.) Where the terms of a policy are clear and unambiguous, the language used will be given its plain meaning; however, if a provision is subject to more than one reasonable interpretation, it is ambiguous and should be construed against the insurer and in favor of the insured. *Murphy*, 234 Ill. App. 3d at 225, 599 N.E.2d at 448-49.

Plaintiff claims that the following provision of the insurance policy issued by defendant is ambiguous:

> "**Part V**
> **Uninsured Motorists Insurance Coverage SS**
>
> \* \* \*
>
> **Exclusions—What is not covered**
> This coverage does not apply to:
>
> \* \* \*
>
> (3) Any person while in \*\*\* a vehicle **you** own which is insured for *this coverage* under another policy." (Bold in original; emphasis added.)

Plaintiff contends that the phrase "this coverage" used in the foregoing provision is ambiguous, in that when the declarations page is considered with this language, it could be construed to mean "coverage in the amount stated in the declarations." In other words, plaintiff claims that if another insurance policy does not have coverage of $100,000 as its limit for liability as the instant policy does, then the policy issued by defendant must cover the difference between the applicable policy and the $100,000 in defendant's policy, *i.e.*, plaintiff is entitled to collect $80,000 from defendant ($100,000 minus the $20,000 from the Pekin policy).

■ Plaintiff had insurance on the motorcycle with Pekin, which he collected. The language of the policy issued by defendant under the uninsured-motorist-coverage provision is not ambiguous. The phrase "this coverage" appears numerous times throughout the policy, always under certain specific types of coverages, in this instance, under the part of the policy entitled "Uninsured Motorists Insurance Coverage SS." It is clear that the phrase "this coverage" is referring to the type of situation described under this part of the policy, *i.e.*, where an uninsured motorist is involved. The $100,000

figure given on the declarations page simply informs a person as to the limits of liability imposed when "this coverage" is involved.

This construction is valid when the section following the exclusion provision is considered. The section following the exclusion provision is entitled "Limits of Liability" and the first statement under this provision states as follows:

"The coverage limit stated on the declarations page for: ***."
By including the phrase "on the declarations page," it is clear that if the phrase "this coverage" was to include information on the declarations page, the policy would have so stated. This reinforces our construction of the phrase "this coverage."

We note that in the trial court's order, it did not specifically find that the foregoing language was ambiguous. What the trial court held was that, since plaintiff was riding his motorcycle at the time of the accident and since plaintiff had an insurance policy with Pekin that covered the motorcycle while defendant's policy did not, no coverage whatsoever was provided under the policy issued by defendant. Inherent in the court's ruling is that the phrase "this coverage" was not ambiguous. We agree with the trial court insofar as the phrase "this coverage" is not ambiguous. We disagree, however, with the trial court's finding that no coverage was provided under the Allstate policy.

This case is analogous to the facts in *Shefner v. Illinois Farmers Insurance Co.* (1993), 243 Ill. App. 3d 683, 611 N.E.2d 626. In *Shefner*, the plaintiff owned two vehicles and had separate insurance policies on each vehicle with two different insurers. The limits on the vehicle plaintiff was driving at the time she had an accident with an uninsured motorist were $50,000, while the limits on the other vehicle she owned but was not driving were $100,000. Plaintiff collected $50,000 on the policy covering the car she was in and also attempted to collect on the other policy on the other vehicle owned by her under the uninsured-motorist provisions. In *Shefner*, the uninsured-motorist-coverage provision stated that the insurer would not "provide insurance for a vehicle other than **your insured car**, unless the owner of that vehicle has no other insurance applicable to this part." (Bold in original.) (*Shefner*, 243 Ill. App. 3d at 685.) Under this language, the trial court in *Shefner* determined that the language was unambiguous and only entitled plaintiff to the uninsured-motorist coverage provided by the insurance policy on the car in which she was in, and the court granted summary judgment in favor of the insurer. The trial court's determination was upheld on appeal, and *Shefner* has since been followed in *Vanek v. Illinois Farmers Insurance Co.* (2d Dist. June 14, 1994), No. 2—93—0203.

■ Although we agree that there is no ambiguity in this case, we find that construing the policy to allow plaintiff to recover only the uninsured-motorist coverage provided by the Pekin policy violates public policy. Our opinion contrasts with that of the second district's *Shefner* and *Vanek*; however, a decision of one district of the appellate court is not binding on other appellate districts (*State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542), and we choose not to follow the second district in this instance.

In this case it is significant that Luechtefeld carried less liability coverage on his motorcycle than on his automobiles ($25,000 per person/$50,000 per accident and $100,000/$300,000, respectively). Moreover, plaintiff only purchased the statutorily required minimum amount of uninsured-motorist coverage of $20,000 per person/$40,000 per accident on the motorcycle. (See 215 ILCS 5/143a (West 1992); 625 ILCS 5/7—203 (West 1992).) Plaintiff suggests reasons why he purchased the Pekin policy in the amounts provided. However, we need not speculate as to what plaintiff expected to receive in return for the Pekin policy because such expectations must be determined through means rooted in public policy. (*Bruder v. Country Mutual Insurance Co.* (1993), 156 Ill. 2d 179, 185, 620 N.E.2d 355, 358.) Suffice it to say, we consider what plaintiff's expectations may have been only to demonstrate the error in denying coverage under the Allstate policy.

Plaintiff argues that there was no reason for him to purchase increased liability coverage on the motorcycle through Pekin in order to obtain uninsured-motorist protection at the $100,000 level because under the Allstate policy he had $100,000 coverage. Plaintiff's reasoning is logical given the law that section 143a of the Illinois Insurance Code (215 ILCS 5/143a (West 1992)) requires coverage of insured persons regardless of the vehicle in which the insured person is located when injured. (See *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044; *Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547, 290 N.E.2d 284.) Thus, if plaintiff did not have the Pekin policy at the time of the accident, he would have been covered under the Allstate policy. In other words, if plaintiff had a choice and could have foregone uninsured-motorist coverage on the Pekin policy, he would have been covered under the Allstate policy. Although it seems somewhat incongruous to extend Allstate's coverage in the face of the exclusionary language of the policy, the supreme court's decision in *Squire* appears to mandate this result.

Allstate points out that the public policy behind the Illinois Safety Responsibility Law (625 ILCS 5/7—100 *et seq.* (West 1992)) is

plain. That policy is that owners and operators of motor vehicles should purchase insurance so as to be able to respond in damages in the amount of $20,000 for any liability incurred for bodily injury to or death of one person and in the amount of $40,000 for bodily injury to or death of two or more persons. (625 ILCS 5/7—203, 7—302, 7—601 (West 1992).) Allstate argues that if the insured wishes to maintain $100,000 of uninsured-motorist protection for a newly acquired vehicle, he must notify the defendant, which then would exercise the rights reserved to it under the policy to either cancel the policy or charge an additional premium for the new vehicle. Defendant contends that it is not against public policy for the defendant's policy to provide the plaintiff with uninsured-motorist coverage to the extent permitted by law; the policy assures that the policyholder will recover to the same extent as he would have, had the uninsured motorist been insured for the minimum limits.

Allstate's argument that public policy is satisfied where minimum uninsured-motorist protection is afforded is flawed for the simple reason that it ignores the public policy of encouraging consumers to purchase increased uninsured-motorist protection. Increased coverage purchased by individual consumers can only serve to benefit society by insuring that when tragedy strikes, losses will be covered as much as possible. From an economic standpoint, encouraging the purchase of maximum coverage benefits society.

Plaintiff concedes that he is not entitled to more than $100,000 in uninsured-motorist coverage. However, he contends that it is against public policy to apply the Allstate exclusionary provision so as to deny him any coverage under the Allstate policy. Here plaintiff purchased the Allstate policy which, by law, would have provided uninsured-motorist coverage to him had plaintiff not had uninsured-motorist coverage on a separate policy. Plaintiff purchased a second insurance policy, specifically listing the motorcycle. Plaintiff and Pekin had no choice but to include the minimal uninsured-motorist protection as part of the Pekin policy. (See 215 ILCS 5/143a (West 1992); 625 ILCS 5/7—203 (West 1992).) Plaintiff contends that but for the statutory requirement that minimal uninsured-motorist coverage be included in said policy, plaintiff would not have purchased additional uninsured-motorist coverage, because he would have been covered under the Allstate policy. Luechtefeld argues that under his public policy argument he is, in essence, being punished for complying with the law, and that by purchasing other insurance in compliance with the law, he essentially bought coverage that "washed away" what he already had. We agree.

When an insurer attempts to limit its liability under the

uninsured-motorist provision of its policy, such limitation must be construed liberally in favor of the policyholder and most strongly against the insurer. (*Hartford Accident & Indemnity Co. v. LeJeune* (1986), 114 Ill. 2d 54, 59, 499 N.E.2d 464, 466; *Squire*, 69 Ill. 2d 167, 370 N.E.2d 1044.) It is illogical to presume that when an insured already has uninsured-motorist coverage of $100,000, the purchase of additional uninsured-motorist insurance by him will obliterate his $100,000 coverage. Public policy would be thwarted were we to conclude that the more uninsured-motorist liability premiums one pays and the more policies one has, the less coverage he is afforded. "If there is to be a 'windfall' in this situation, it should be to the insured, who paid the several premiums, rather than to the insurer, which collected them." *Squire*, 69 Ill. 2d at 181, 370 N.E.2d at 1050.

■ Defendant contends that plaintiff suffered no prejudice by the trial court's decision because plaintiff has received the minimal amount of uninsured-motorist protection afforded by law. We find this argument without merit because plaintiff paid additional premiums to insure that he would have greater uninsured-motorist coverage than the statutory minimum. Section 143a of the Illinois Insurance Code, requiring uninsured-motorist coverage in every policy, is consumer legislation designed to protect the consumer. (See *Monroe v. United States Fidelity & Guaranty Co.* (1992), 237 Ill. App. 3d 261, 265-66, 603 N.E.2d 855, 858.)

> "We cannot ignore that a premium was paid for uninsured motorist protection. If that protection is not there, the policyholder has been denied substantial economic value in return for the premiums which have been paid." (*Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272, 278, 592 N.E.2d 1031, 1034.)

Consumer protection is nullified when an insured (the consumer) is forced to pay what in essence amounts to unnecessary premiums in order to achieve the same level of insurance coverage as was afforded him before he purchased a second policy.

In light of the foregoing, we reverse the trial court's entry of summary judgment for the defendant and remand this cause for further proceedings.

Reversed and remanded.

LEWIS, P.J., and WELCH, J., concur.