NOTICE

Decision filed 10/22/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190537

NO. 5-19-0537

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KENT STROWMATT and BRADLEY STROWMATT, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 18-MR-152 |
| SENTRY INSURANCE, a Mutual Company, a/k/a Viking Insurance Company of Wisconsin, | ) ) ) ) | Honorable Sarah D. Smith, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Cates and Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Kent Strowmatt and Bradley Strowmatt, sought uninsured motorist coverage from the defendant, Sentry Insurance, a Mutual Company, a/k/a Viking Insurance Company of Wisconsin (Viking Insurance), stemming from an automobile accident that occurred while Bradley, Kent's minor son, was a passenger in a vehicle being driven by an uninsured motorist. Viking Insurance denied the plaintiffs' claim for uninsured motorist coverage, claiming that Bradley was not an insured under Kent's policy, as it was a nonowner's policy that did not afford coverage to Kent's family members. Thereafter, the plaintiffs filed a complaint for declaratory judgment. Viking Insurance then filed a motion for judgment on the pleadings, which the circuit court granted on July 8, 2019. The plaintiffs filed a motion to reconsider, which was denied on

1

December 2, 2019. The plaintiffs now appeal the circuit court's judgment. For the following reasons, we reverse and remand for proceedings consistent with this decision.

¶ 2                                    I. BACKGROUND

¶ 3     On September 26, 2017, Bradley suffered injuries while riding in an uninsured motor vehicle being operated by Michael Katich; Katich was the at-fault driver in the accident. As a result of the injuries that Bradley sustained in the accident, he required medical care, and Kent was liable for his son's medical expenses totaling $13,295.95. At the time of the accident, Kent was the named insured under an automobile policy issued by Viking Insurance that provided uninsured motorist benefits in the amount of $25,000 and medical payment coverage in the amount of $2000. Prior to filing the complaint for declaratory judgment, the plaintiffs filed a claim for uninsured motorist coverage under this policy. Viking Insurance denied the claim, asserting that Bradley was not an insured under the policy and that Kent's claim for medical expenses was derivative of Bradley's claim and thus not covered under the policy.

¶ 4     The plaintiffs subsequently filed the complaint for declaratory judgment on June 5, 2018, seeking a declaration that the policy provided coverage for uninsured motorist benefits and medical pay benefits here. The policy, which was attached to the complaint, contained the following language regarding what constituted an insured:

            "DEFINITIONS USED THROUGHOUT THIS POLICY

        (1) 'We', 'us', and 'our' mean the Company shown on your Declarations Page providing this insurance.

        (2) 'You' and 'Your' mean the person(s) shown as the Named Insured on your Declarations Page. You and your also means that person's spouse if residing in the same household.

2

(3) 'Relative' means a person living in your household. This person must be related to you by blood, marriage or adoption. Relative includes a ward, foster child or a minor under your guardianship who lives in your household. ***

\* \* \*

## PART II – MEDICAL PAYMENTS COVERAGE

\* \* \*

We will pay the usual and customary charge for reasonable and necessary expenses incurred within one year from the date of car accident. The expenses must be for medical and funeral services because of bodily injury sustained by an insured person and caused by a car accident.

\* \* \*

## PART III – UNINSURED MOTORISTS COVERAGE

***

We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by a car accident and result from the ownership, upkeep or use of an uninsured motor vehicle.

***

*Additional Definitions Used in This Part Only.*

As Used in this Part:

(1) 'Insured Persons' means any of the following

(A) You

3

(B) A relative.

\* \* \*

(2) 'Uninsured motor vehicle' means a motor vehicle which is

\*\*\*

(B) A hit-and-run vehicle whose operator or owner is unknown.

This vehicle must strike any of the following:

(i) You.

(ii) A relative.

(iii) A vehicle which you or a relative are occupying.

(iv) Your insured car.

\* \* \*

PERSONAL AUTO POLICY AMENDATORY ENDORSEMENT - ILLINOIS

All terms and conditions of the Personal Auto Policy and any other endorsements also apply to this endorsement except as changed by this endorsement.

DEFINITIONS USED THROUGHOUT THIS POLICY.

Definition (2) is replaced by the following

(2) 'You' and 'your' mean the person(s) shown as the Named Insured on your Declarations Page. You and your also means that person's spouse if residing in the same household. This includes a person, if a resident of the same household, who has entered into a civil union with the Named Insured as prescribed by Illinois law.

Definition (3) is replaced by the following:

(3) 'Relative' means a person living in your household. This person must be related to you by blood, marriage, civil union or adoption. Relative includes a ward foster

4

child or a minor under your guardianship who lives in your household. \*\*\*

\* \* \*

PART III – UNINSURED MOTORISTS COVERAGE

*Additional Definitions Used in this Part Only.*

Definition (2)(B) is replaced by the following

(2) 'Uninsured motor vehicle' means a motor vehicle which is

(B) A hit-and-run vehicle whose operator or owner is unknown.

This vehicle must strike any of the following

(i) You

(ii) A relative.

(iii) A vehicle which you or a relative are occupying.

(iv) Your insured car.

\* \* \*

NAMED NON-OWNER ENDORSEMENT–ILLINOIS

All terms and conditions of the Personal Auto Policy and any other endorsements also apply to this endorsement except as changed by this endorsement.

Definitions Used Throughout This Policy.

The following definitions are amended in or added to your policy.

(2) 'You' and 'your' means only the person shown as the Named Insured on your Declarations Page.

\* \* \*

PART III – UNINSURED MOTORISTS COVERAGE

*Additional Definitions Used In This Part Only.*

5

Definition (1) is replaced by the following

(1) 'Insured person' means

A. You."

¶ 5      The policy period of this insurance policy was June 30, 2017, through December 30, 2017. The endorsements appeared to be issued with the policy and were in effect on September 26, 2017, the date of the car accident. The circumstances surrounding the issuance of the policy and any discussion between the plaintiff and the insurance agent are not part of the record on appeal.

¶ 6      On July 24, 2018, Viking Insurance filed an answer to the plaintiffs' complaint and also filed a counterclaim seeking a declaration that the motor vehicle policy did not provide uninsured motorist coverage and medical payments coverage for Bradley. On December 17, 2018, Viking Insurance filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2016)). In the motion, Viking Insurance noted that the insurance policy contained a "Named Non-Owner Endorsement," which changed the definition of "insured" in the available medical pay coverages and uninsured motorist coverages from the named insured and relatives to just the named insured. The motion stated that Kent was the only named insured listed on the policy declarations sheet. Thus, the motion argued that Bradley was not covered under the policy for his medical pay and uninsured motorist claims and asked the trial court to grant judgment in favor of Viking Insurance and against the plaintiffs.

¶ 7      On January 11, 2019, the plaintiffs filed a response to Viking Insurance's motion for judgment on the pleadings, which noted that Bradley was covered under the initial policy by the language of the uninsured provisions, that he was also covered under the Illinois amendatory endorsement for uninsured benefits, but he was not covered under the Illinois amendatory nonowner endorsement, which reduced coverage to just Kent and did not include any family

6

members. The response also noted that there was no indication in the record as to when this policy was first issued to Kent, how the policy progressed from insuring family members to only covering Kent, and how, if at all, he was informed about this material change to the scope of his coverage. The response contended that the coverage in the nonowner endorsement conflicted with the other definitions in the policy, which covered family members, and that the ambiguity in the policy must be construed in favor of a finding of coverage. The response also argued that the record did not support a finding that Kent was advised, understood, or accepted the language of the nonowner endorsement, which was required for a finding that the endorsement controlled over the other policy language. Thus, the response contended that the nonowner endorsement was not enforceable. Alternatively, the response argued that even if the endorsement was enforceable, Kent could recover for injury to his minor son because Bradley's claim must be asserted through his father. Therefore, the response contended that the person recovering under the policy would be Kent, not Bradley.

¶ 8    On January 15, 2019, Viking Insurance filed a reply, which stated that there was no progression of coverage as described by the plaintiffs because the June 30, 2017, policy issued to Kent contained the same terms and conditions that were in effect on the date of the vehicle accident, and Kent did not dispute that this was the policy that he purchased from Viking Insurance. The reply noted that the policy's declarations page indicated that the following policy forms and endorsements applied: "IL1101-0315, NN01-L-0315, PAP (12/13), PPA-IL-0315, and UIMA-IL-0315." The declarations sheet also contained a note that the coverages listed applied for only the "named insured while driving non-owned cars." The reply further noted that the policy included a 13-page standard form automobile policy as well as specific endorsements, such as the personal auto policy amendatory endorsement-Illinois, the named-nonowner endorsement-Illinois, and the

7

underinsured motorist coverage endorsement-Illinois. Thus, these endorsements were all issued at the same time and were part of one single policy issued to Kent. Further, the reply argued that Kent had an affirmative duty to read the insurance policy that he purchased; he chose to purchase a policy that insured himself exclusively; and if that was not his intention, he was obligated under Illinois law to bring any discrepancies to the attention of his carrier. The reply argued that the nonowner endorsement did not conflict with the other language of the policy as the endorsement modified the definition of "insured person."

¶ 9      As for the alternative argument, the reply argued that, under Illinois law, derivative bodily injury claims to someone not insured under the insurance policy were outside of the intended scope of the uninsured motorist provisions and excluding such claims did not violate public policy. The reply noted that Kent's claim for medical expenses derived from the underlying bodily injury claim of Bradley and argued that Kent could not make this claim as Bradley was not covered under the policy.

¶ 10      Attached to the reply was the insurance application signed by Kent on June 30, 2017, which identified Kent as the named insured, listed the policy type as "Named Non-Owner Policy," and contained the following note: "NAMED NON-OWNER POLICY: If this policy type is indicated above, this policy provides the selected coverage for only the named insured while driving non-owner cars." Also, under vehicle information, it stated "Named Non-Owner Policy – Vehicle Information does not apply." On the same page as the signature lines, the application instructed that the policyholder must report to the insurer all persons of legal driving age or older who live with the policyholder either temporarily or permanently.

8

¶ 11    On July 8, 2019, the trial court entered an order, which granted Viking Insurance's motion

for judgment on the pleadings and entered judgment in favor of Viking Insurance. In the order, the

court stated as follows:

> "While the court agrees with [the plaintiffs] that the contract as written (with almost
>
> four different definitions of the insured person in each of the different endorsements) does
>
> appear ambiguous, the case law cited by [Viking Insurance] holds that an insurance policy
>
> must be construed in conjunction with all endorsements in order to determine the meaning
>
> and effect of the insurance contract. If there is any ambiguity between the policy and the
>
> endorsement, the endorsement will control. This case law directly applies to the matter at
>
> hand. In this case, [Kent] purchased limited 'named non-owner coverage' where he alone
>
> is named as the insured party. While [the plaintiffs'] counsel made a compelling argument
>
> that Bradley Strowmatt should be afforded coverage under the uninsured provision as he
>
> is a minor and his father is statutorily responsible for his medical bills, this Court could
>
> find no case law or other statutory authority to support this position."

¶ 12    On July 29, 2019, the plaintiffs filed a motion to vacate, set aside, and/or modify the trial

court's order. In the motion, the plaintiffs argued that there were unresolved issues of fact that

prevented the requested relief; the plaintiffs contended that the mere existence of the endorsement,

by itself, was not a basis for granting the relief sought as Illinois law required a finding that Kent

knew of the changes, understood those changes, and approved of the coverage changes. The

plaintiffs noted there was no evidence presented as to how, when, and under what circumstances

the endorsement was created. They also contended that the various changes to the policy rendered

it ambiguous because it was subject to more than one reasonable interpretation. Alternatively, they

argued that, even if Kent was the only insured under the policy, the plain language of the policy

9

allowed for his recovery here. The plaintiffs contended that the policy language did not require Kent to be the one physically injured or occupying the uninsured vehicle; all that was required was that Kent be an insured under the policy and be entitled to recover from the uninsured driver. Thus, Kent was entitled to recover under his uninsured driver benefits for medical expenses he was obligated to pay.

¶ 13    On December 2, 2019, the trial court entered an order, denying the plaintiffs' motion to vacate. In the order, the court found that the language of the endorsement controlled over other contradictory language in the policy and therefore there was no ambiguity. Also, the court found that Kent was obligated to review his policy at the time it was issued to determine if the appropriate coverage was issued. The court noted that its previous order was based on an examination of the policy language and that it was unnecessary to conduct a further factual inquiry as to when or what Kent knew or expected from the policy at the time that his son was injured. Further, the court found that since Bradley was not an insured under the policy, Kent may not recover his derivative claim for his son's medical expenses. The plaintiffs now appeal.

¶ 14                                    II. ANALYSIS

¶ 15    As set out above, this case was decided based on Viking Insurance's motion for judgment on the pleadings. Any party may move for a judgment on the pleadings. 735 ILCS 5/2-615(e) (West 2016). A judgment on the pleadings is proper where the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law; a judgment on the pleadings is similar to a motion for summary judgment but limited to the pleadings. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). In resolving such a motion, all well-pleaded facts set forth in the pleadings of the nonmoving party are taken as true along with any fair inferences drawn therefrom. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d

381, 385 (2005); *Wilson*, 237 Ill. 2d at 455. If the pleadings put into issue one or more material facts, then evidence must be taken to resolve those issues, and judgment may not be entered on the pleadings. *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340, 347 (1999). We review *de novo* whether the pleadings presented any issues of material fact and, if not, then whether the movant was entitled to judgment as a matter of law. *Gillen*, 215 Ill. 2d at 385. *De novo* review, which is completely independent of the trial court's decision, means that the reviewing court performs the same analysis that a trial judge would perform. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151.

¶ 16    Under Illinois law, the general rules governing the interpretation of contracts govern the interpretation of insurance policies. *Bituminous Casualty Corp. v. Iles*, 2013 IL App (5th) 120485, ¶ 20. The " 'primary objective' " in interpreting an insurance policy is to determine and give effect to the parties' intent as expressed in the policy language. *Id.* When interpreting insurance policies, the agreement is to be enforced as written so long as it is unambiguous and only to the extent that it does not contravene public policy. *Gibbs v. Madison Mutual Insurance Co*., 242 Ill. App. 3d 147, 152 (1993). If the terms of the insurance policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Wilson*, 237 Ill. 2d at 456. "Importantly, a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen*, 215 Ill. 2d at 393. In determining whether there is an ambiguity, a court must construe the policy as a whole, instead of looking at isolated parts of the policy, and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Wilson*, 237 Ill. 2d at 456; see also *Gibbs*, 242 Ill. App. 3d at 152 (in determining an ambiguity, the provision must be read in its factual context and not in isolation).

11

¶ 17    The policy and endorsements of an insurance policy must be construed together to determine the meaning and effect of the insurance contract. *Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.*, 217 Ill. App. 3d 181, 185 (1991). Where the policy and the endorsements conflict, the endorsement prevails, at least where it is clear that the policyholder understood and accepted the language of the endorsement. *Id*. at 186. Also, where there are any exceptions to the general area of protection, those exceptions must be stated in such language and bold type as to warrant the conclusion that the insured understood and accepted them. *Protective Insurance Co. v. Coleman*, 144 Ill. App. 3d 682, 695 (1986); see also *Hoglund v. State Farm Mutual Automobile Insurance Co*., 148 Ill. 2d 272, 279 (1992) (exculpatory language must be read in conjunction with the policyholder's reasonable expectations, and it must also be read in conjunction with the public policy behind the uninsured motorist statute and the coverage intended by the insurance policy itself). An insurance company is prohibited from directly or indirectly denying uninsured motorist coverage to someone who qualifies as an insured for purposes of liability coverage. *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, ¶ 31.

¶ 18    Here, when comparing the endorsement and the policy language, as well as the application, there is contradictory language as to whom is considered an insured under Kent's policy. The language of the policy and the personal auto policy amendatory endorsement defines an insured as the named insured and a relative, *i.e.*, a person living in the named insured's household, which would include Kent's minor son, Bradley. This definition of insured is used under the section setting out the coverages for uninsured benefits, which was the coverage that Kent was seeking here. Conversely, the language of the named nonowner endorsement limits the definition of

12

insured to just the named insured, which would be Kent. Thus, Bradley would not be covered under that definition.

¶ 19 Moreover, the language in the insurance application that was signed by Kent and the notes and instructions in the declarations page also contain contradictory language as to whom is covered under the policy. For instance, on the application under additional information, there is a note that if "named non-owner policy type is indicated above, the policy provides the selected coverage for only the named insured while driving non-owned cars." Then above, the policy type is listed as named nonowner policy, and Kent is identified as the named insured. However, on the signature page, the insured is instructed that he must report to the insurance company all persons of legal driving age or older who live with him temporarily or permanently. Also, on the declarations page, there is a note that states that the coverage listed in the declarations page only applied for the named insured while driving nonowned cars. At oral argument, Viking Insurance explained the discrepancies by saying that this was a form policy that was tailored by adding the endorsement that applied to Kent's particular situation, *i.e.*, a nonnamed insurance policy only covering Kent. However, the contradictory language of having multiple definitions of insured in the policy, as well as the instruction to report all legal drivers in the residence, and the other language limiting an insured to only the named insured makes it uncertain who is covered under Kent's policy.

¶ 20 As noted above, the endorsement controls where there is a conflict between the policy language and endorsement, at least where it is clear that the policyholder understood and accepted the language of the endorsement. Here, although Viking Insurance contends that there was never any question as to what type of policy Kent intended to purchase, there is nothing in the record concerning Kent's reasonable expectations and intention when purchasing the policy. Moreover, as the trial court's decision was based on the pleadings, there is no information contained in the

record as to whether Kent understood or accepted the limiting language of the policy. Thus, because we have a conflict between the policy language and endorsement without any indication as to whether Kent understood and accepted the language of the endorsement, there is at least some question of fact that needs resolution here.

¶ 21　　Although Viking Insurance relies on *State Farm Mutual Automobile Insurance Co. v. George*, 326 Ill. App. 3d 1065 (2002), to support its position that Kent cannot recover for Bradley's injuries under the insurance policy, we find that case distinguishable. In that case, James George and Erin Hitch had a minor child, were never married, and the child lived with James. *Id*. at 1066. Hitch was killed when she was a passenger in a vehicle that was involved in a single car accident. *Id*. The driver of the vehicle had no liability insurance, but George had an automobile insurance policy with State Farm, and the minor child was a named insured on that policy. *Id*. at 1066-67. Subsequently, George made an uninsured motorist claim under that policy on behalf of the minor child for the loss of society that the child suffered from her mother's death. *Id*. at 1067. State Farm filed an action asking the trial court to declare that the minor child could not recover under George's policy and then filed a motion for summary judgment, which was granted. *Id*. On appeal, the appellate court framed the issue as whether section 143a of the Illinois Insurance Code (215 ILCS 5/143a (West 2000)) mandated coverage for loss of society when the actual bodily injury was sustained by any person or solely by an insured person. *George*, 326 Ill. App. 3d at 1067. Section 143a(1) of the Insurance Code required coverage "for the protection of persons *** who [were] legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." 215 ILCS 5/143a(1) (West 2000).

¶ 22    In answering the question at issue, the appellate court looked at the public policy underlying the Insurance Code, which was to place insured parties injured by an uninsured driver in substantially the same position they would have been in if the driver had been insured. *George*, 326 Ill. App. 3d at 1068. The court found that the Insurance Code protected insured parties, not those who were uninsured. *Id*. The court noted that collateral claims based on physical injury to another were derived only from the underlying claim of the physically injured person and were not separate and distinct claims; a loss of consortium claim was derivative of a bodily injury claim. *Id*. The court concluded that a loss of society claim could not be recovered under a policy where the injured party could not recover. *Id*. The court then found as follows:

> "Claims derivative of bodily injury to someone not insured under the policy are outside the intended scope of uninsured motorist provisions and excluding such claims does not violate the public policy underlying uninsured motorist acts." *Id*.

¶ 23    Applying this reasoning to the case, the appellate court found that because Hitch would not have been insured under George's policy, she would have no right to make a claim under his policy for her bodily injury. *Id*. As the minor child's claim was derived from her mother's, the minor's damages could not be covered by the uninsured motorist provisions of George's policy because that would extend coverage beyond the intended scope of George's policy. *Id*. at 1068-69. The court further found that excluding the minor child's claim from coverage did not violate public policy. *Id*. at 1069.

¶ 24    Here, Kent was not bringing a loss of society claim on behalf of his minor child for the child's loss of an uninsured person; Kent was not seeking compensation for a nonpecuniary loss. Kent, who was an insured person under this policy, was seeking compensation for his minor son's injuries that were the result of an accident involving an uninsured motorist.

15

"It is well established in Illinois that, pursuant to section 15(a)(1) of the Rights of Married Persons Act (750 ILCS 65/15(a)(1) (West 2006)), commonly referred to as 'the family expense statute,' parents are responsible for the medical expenses of their minor children. [Citation.] The common law in turn gives parents a cause of action against a tortfeasor who, by injuring their child, caused them to incur the medical expenses." *Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895, 922 (2007).

Any cause of action to recover the medical expenses is that of the parents, and if the parents are not entitled to recover, then neither is the child. *Id.* Thus, under the family expense statute, Kent, as the minor child's father, was legally obligated to pay the medical expenses that were incurred as a result of the car accident caused by the uninsured driver. Thus, although the injury was to Kent's minor son, the submitted claim was for Kent's own economic loss. Therefore, we do not find *George* controlling here. Because we find that there was some question of fact as to whether Bradley was included as an insured under Kent's insurance policy with Viking Insurance, we conclude that the trial court erred in granting judgment on the pleadings in favor of Viking Insurance. Accordingly, we reverse the circuit court's judgment in favor of Viking Insurance and remand for further proceedings consistent with this decision.

¶ 25                                    III. CONCLUSION

¶ 26     For the foregoing reasons, we reverse the circuit court's judgment in favor of Viking Insurance and remand for further proceedings.


¶ 27     Reversed and remanded.

16

2020 IL App (5th) 190537

NO. 5-19-0537

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| KENT STROWMATT and BRADLEY STROWMATT, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Apellants, | ) ) | |
| v. | ) ) | No. 18-MR-152 |
| SENTRY INSURANCE, a Mutual Company, a/k/a Viking Insurance Company of Wisconsin, | ) ) ) | Honorable Sarah D. Smith, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

---

**Opinion Filed:**     October 22, 2020

---

**Justices:**     Honorable Thomas M. Welch, P.J.

Honorable Judy L. Cates, J., and
Honorable Milton S. Wharton, J.,
Concur

---

**Attorney for Appellants**     Lanny H. Darr II, Darr Law Offices, Ltd., 307 Henry Street, Suite 406, Alton, IL 62002

---

**Attorney for Appellee**     Michael J. Bedesky, Heyl, Royster, Voelker & Allen, PC, 105 West Vandalia Street, Suite 100, Edwardsville, IL 62025-0467

---