DAWN HOGLUND, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 1—89—1572

Opinion filed March 19, 1991.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Howard A. London and Joel M. Horwich, of counsel), for appellant.

James J. Hoffnagle, of Taylor, Miller, Sprowl, Hoffnagle & Merlette, of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff, Dawn Hoglund, was injured when a motorcycle on which she was a passenger and which was being driven by Tammy Marko was involved in an accident with a vehicle driven by Barbara Etherton. Plaintiff was 14 years old at the time of the incident and was insured under an auto policy issued by State Farm Mutual Auto Insur-

ance Co. (State Farm) to her father. In her complaint, plaintiff alleged that it was Marko's negligent operation of the motorcycle that caused the collision, resulting in damages to her in excess of $200,000.

Etherton was covered under a policy of automobile insurance with applicable liability limits of $100,000, the full amount of which was paid to plaintiff in settlement of that claim. The motorcycle driven by Marko was uninsured on the date of the accident; accordingly, plaintiff, through her counsel, made a written demand on State Farm and offered to settle her claim for the $100,000 limits of the uninsured motorist provisions of her father's policy. State Farm, however, denied coverage based on the following set-off and subrogation provisions of the policy:

"Limits of Liability
Coverage U
* * *

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured*:

a. by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;
* * *

Conditions
* * *

3. *Our Right to Recover Our Payments*
* * *

b. Under uninsured motor vehicle coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury*." (Emphasis in original.)

State Farm therefore informed plaintiff that because she accepted $100,000 from Etherton, it could, pursuant to the above-quoted set-off provision, reduce its coverage to her by $100,000, and thus, owed her nothing.

Plaintiff then filed a complaint for declaratory judgment, requesting the trial court to declare that, notwithstanding the set-off provision, State Farm was obligated to indemnify her for any damages in excess of the $100,000 she received from Etherton. In response, State Farm filed a motion for judgment on the pleadings, to which plaintiff countered with a cross-motion for the same relief. After the court granted State Farm its motion and denied plaintiff's, she appealed.

The only question for our review is whether, in the factual context of this case, the set-off and/or subrogation terms of the insurance con-

tract are legally enforceable. Three statutory provisions are pertinent to plaintiff's claim. First, our Insurance Code provides that no automobile insurance policies shall be issued or renewed for cars "registered or principally garaged in this State unless [uninsured motorist] coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of the Illinois Vehicle Code." (Ill. Rev. Stat. 1983, ch. 73, par. 755a.) At the time plaintiff was injured, section 7—203 of the Vehicle Code, the financial responsibility law, required that every insurance policy cover the insured in an amount "not less than $15,000 because of bodily injury to or death of any one person in any one motor vehicle accident." Ill. Rev. Stat. 1983, ch. 95½, par. 7—203.

The Insurance Code further provides:

> "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in [this] State with respect to any motor vehicle registered or principally garaged in this State unless uninsured motorist coverage as required in Section 143a [Ill. Rev. Stat. 1983, ch. 73, par. 755a] of this Act is offered in an amount up to the insured's bodily injury liability limits." (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(1).)

In accordance with this statute, State Farm offered plaintiff's father uninsured motorist coverage up to $100,000, the bodily injury liability limits of his policy and, as noted above, he acquired such coverage.

State Farm, however, in support of its contention that it owes plaintiff nothing, cites section 143a(4) (Ill. Rev. Stat. 1983, ch. 73, par. 755a(4)), which provides:

> "In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made ***."

State Farm also cites *Ackermann v. Prudential Property & Casualty Insurance Co.* (1980), 83 Ill. App. 3d 590, which applies an earlier version of the statute we have just quoted (Ill. Rev. Stat. 1975, ch. 73, par. 755a(3), now par. 755a(4)), but both the statute and the facts implicated in that case are nearly identical to those we encounter in the

case at bar. The plaintiff in *Ackermann*, as in this case, was injured while he was a passenger in the vehicle of an uninsured motorist, and the amount available to him from the insurance company of the other vehicle involved in the accident was inadequate to compensate him for his injuries. The plaintiff sought uninsured motorist benefits from his carrier, but it refused to pay, relying upon the provisions of the uninsured motorist statute referred to above (Ill. Rev. Stat. 1975, ch. 73, par. 755a(3)) and a provision in the policy similar to the one at issue in the instant case. The court held that the setoff was proper. 83 Ill. App. 3d at 594.

However, State Farm overlooks that *Ackermann* was decided in 1980, before the effective date of section 143a—2(1) of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(1)), set forth above, which, as noted earlier, adds to the requirement that policy holders carry a minimum amount of uninsured motorist coverage, the corollary obligation upon carriers that they offer their insureds additional uninsured motorist coverage up to the liability limits of their policies. Moreover, applying *Ackermann* in the manner suggested by State Farm would contravene the public policy expressed in our uninsured motorist law and consistently referred to and upheld by our supreme court in cases construing that law. In what appears to be the earliest of these pronouncements, and, incidentally, a case cited by State Farm, the court stated:

"It would appear that the purpose of the provision in our Insurance Code requiring that every automobile liability policy shall contain uninsured motorist vehicle coverage in an amount not less than the limits described in the Financial Responsibility Law [citation] was intended to place the policy holder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act." (*Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4 (citing cases from other jurisdictions).)

(See also *Severs v. Country Mutual Insurance Co.* (1982), 89 Ill. 2d 515, 519.) Furthermore, "[t]he purpose underlying a statute cannot be circumvented by the insertion of a contrary or restricting provision in an insurance policy." *Severs*, 89 Ill. 2d at 520.

And in another case relied upon by State Farm, namely, *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, the court reiterated that policy, as it has in all of its discussions of the issue involved in this case. Although *Glidden* allowed the insurance company to subrogate "to the rights of the insured to any pro-

ceeds recovered from one legally responsible for the injury" (57 Ill. 2d at 338), nowhere does the court hold that such subrogation would be allowed if it decreased the insured's recovery below the amount he would have received had the tort-feasor been insured. On the contrary, the court stated that "the public policy expressed by our uninsured-motorist statute is that the insured be provided coverage which would compensate him, in event of injury by an uninsured motorist, to at least the same extent as had he been injured by a motorist who was insured in compliance with the Financial Responsibility Law." 57 Ill. 2d at 335.

The decisions of other States support this holding. In a case which tracks the statutory and contractual provisions of the case at bar, the supreme court of New Hampshire held that the insurer had

> "a right of 'subrogation' only as to amounts recovered from the uninsured motorist against whose liability it indemnified its insured; and not the right which the defendant asserts, based upon a literal reading of the section, to set off against the required uninsured motorist coverage up to its dollar limit any sums recovered from any source responsible for the injury including an insured motorist. Adoption of the defendant's contention would effectively nullify the coverage ostensibly provided by the policy, since because of the $15,000 paid by the carrier for the Virginia motorist, the defendant would pay nothing by reason of the required $10,000 uninsured motorist coverage.
>
> * * *
>
> [If the insurance company were to prevail], the carrier obligated to furnish uninsured motorist coverage would be subsidized at the expense of its insured, by appropriation of his recovery from an insured third-party motorist, without regard to the former's prior and complete indemnification. This interpretation of the statute would result in nullification of the established legislative purpose to provide a minimum of $10,000 of uninsured motorist coverage and cannot be adopted. [Citations.]" *Raitt v. National Grange Mutual Insurance Co.* (N.H. 1971), 285 A.2d 799, 802.

Thus, State Farm's reliance upon section 143a(4) of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a(4)) is not well grounded because such subrogation statutes are "not concerned with other joint tort-feasors." *Harthcock v. State Farm Mutual Automobile Insurance Co.* (Miss. 1971), 248 So. 2d 456, 459 (construing a

statutory subrogation provision identical in substance to the one in the instant case).

State Farm cites *Schutt v. Allstate Insurance Co.* (1985), 135 Ill. App. 3d 136, in support of its allegation that its set-off and subrogation provisions are enforceable; but although *Schutt* allowed the insurance company to set off uninsured motorist coverage against bodily injury liability coverage, the court noted "that the setoff clause only acts to prevent double recovery in accordance with principles of Illinois law on damages and does not prejudice a plaintiff who has sustained injuries as a result of the negligence of an uninsured motorist." (135 Ill. App. 3d at 140.) Here, in contrast, State Farm by its motion for judgment on the pleadings does not contest the total amount of plaintiff's damages and, therefore, is not seeking to prevent double recovery.

*Thatcher v. Eichelberger* (1981), 102 Ill. App. 3d 231, also cited by State Farm, is distinguishable because, as in *Ackermann*, the insurance policies in that case were issued before the effective date of section 143a—2(1) of the Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(1)), which gave insureds a statutory right to purchase extra uninsured motorist coverage. Furthermore, *Thatcher* did not address whether subrogation rights can be used by insurers with respect to payments made to injured parties by insured motorists. More important, in *Thatcher*, unlike in the case at bar, plaintiff voluntarily signed a release and trust agreement in which she agreed to pay over to State Farm any monies she later collected, and the court held that the agreement was binding. 102 Ill. App. 3d at 237.

■ As noted earlier, State Farm's position is that it pay nothing at all, *i.e.*, neither the statutory minimum nor the greater coverage. Accordingly, we deem State Farm to be fully cognizant that although the rulings in the cases we have cited and discussed above apply laws which require the purchase of uninsured motorist coverage in a specified amount, while the critical statute in the case at bar (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(1)) provides merely an option for the acquiring of such insurance in a greater than the required amount, the result reached by the court need not be different. In enacting that provision of the Code, the statutory objective of the General Assembly was incontestably to encourage full protection of innocent persons against uninsured and financially irresponsible motorists. It is beyond dispute, then, that the public policy underlying that provision is supremely achieved by making available to the consumer uninsured motorist coverage that matches his bodily injury liability limits. Therefore, while the purchase of coverage over and beyond the required

amount is an option that may be declined by the insured, once the option is exercised the carrier should not be permitted to restrict the class of persons which the legislature intended to benefit. Consequently, we find State Farm's attempted evasion of its contractual liability to be repugnant to the intent of the legislature. Moreover, "insurance companies should not be permitted to collect premiums for a given amount of coverage and thereafter apply limiting clauses to absolve their liability to the insured. [Citation.]" *Maid v. Illinois Farmers Insurance Co.* (1981), 101 Ill. App. 3d 1065, 1067.

■ Accordingly, because, if enforced, they would violate the public policy inherent in the statutes referred to above, we conclude that State Farm's subrogation and set-off provisions are totally unenforceable in the instant case (*Wilhelm v. Universal Underwriters Insurance Co.* (1978), 60 Ill. App. 3d 894, 901), and that plaintiff is entitled to recover the entire $100,000 benefit from State Farm under the provisions of her policy.

Reversed and remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

HARTMAN and DiVITO, JJ., concur.