(Nos. 71713, 71714 cons

DAWN HOGLUND, Appellee, v. STATE FARM MU-
TUAL AUTOMOBILE INSURANCE COMPANY,
Appellant.—PATRICIA GREENAWALT, Appellee, v.
STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, Appellant.

*Opinion filed March 26, 1992.—Rehearing
denied June 1, 1992.*

BILANDIC, J., took no part.

James J. Hoffnagle and Frank C. Stevens, of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellant.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Howard A. London, Alvin R. Becker and Lawrence R. Barezky, of counsel), for appellee Dawn Hoglund.

James J. Hoffnagle and Frank C. Stevens, of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellant.

Gino P. Naughton, of Edward R. Vrdolyak, Ltd., of Chicago, for appellee Patricia Greenawalt.

JUSTICE HEIPLE delivered the opinion of the court:

These consolidated cases arose out of situations wherein plaintiffs were injured while they were passengers of uninsured motor vehicles when the drivers of the vehicles collided with other vehicles. In each case, the drivers of both vehicles were at fault. The drivers of the other vehicles each had bodily injury policy limits of $100,000, and this amount was paid to each plaintiff. Both plaintiffs allegedly suffered damages in excess of the $100,000 paid to them and filed claims against defendant, State Farm, each seeking uninsured motorist benefits for the excess damages under their own policies. State Farm denied the claims based on its interpretation of the policy language, finding a complete setoff.

Appellee Hoglund sought relief under her father's uninsured motor vehicle coverage because the driver of the motorcycle upon which she was a passenger was uninsured. She sought the policy limit of $100,000, claiming her total damages were over $200,000. Appellee Greenawalt also sought relief under her uninsured motorist policy. Her husband was driving the car in which she was a passenger. Although he carried insurance, he was effectively "uninsured" because the policy excluded claims by

family members. Greenawalt claims her damages are in excess of $400,000 and seeks payment of her uninsured motorist policy limit of $100,000.

Although the parties do not raise the issue whether Greenawalt is entitled to recover under her uninsured motorist policy based on the doctrine of interspousal immunity, *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, is controlling. *Elkins* held that an insured woman was "legally entitled to recover" from her tortfeasor husband under an uninsured motorist policy. Thus, there is no bar to recovery in Illinois based on spousal immunity.

The uninsured motor vehicle policies issued to plaintiffs by defendant in the instant cases included a setoff and subrogation provision, which provides in part:

"Limits of Liability

\*\*\*

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured*:

a. by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*;

b. for *bodily injury* under the liability coverage; or

c. under any worker's compensation, disability benefits, or similar law.

\* \* \*

Conditions

\* \* \*

3. *Our Rights to Recover Our Payments*

\* \* \*

b. Under uninsured motor vehicle coverage:

(1) we are subrogated to the extent of our payments to the proceeds of any settlement the injured *person* recovers from any party liable for the *bodily injury*." (Emphasis in original.)

Section 143a(4) of the Illinois Insurance Code provides:

> "(4) In the event of payment to any person under the coverage required by this Section [minimum liability insurance] and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the property damage, bodily injury or death for which such payment is made ***." Ill. Rev. Stat. 1985, ch. 73, par. 755a.

State Farm argues that its policy language tracks the statute and that such language supports a setoff against uninsured motorist coverage of all amounts recovered from other sources. Accordingly, State Farm denied the claims of Hoglund and Greenawalt, stating that because both plaintiffs had received payments of $100,000 from a legally liable party, State Farm was entitled to a setoff whereby it could reduce its coverage by the $100,000 payment and thus owe the claimants nothing. Both plaintiffs then sought relief, requesting the court to declare that State Farm was obligated to indemnify them for their damages in excess of the amounts paid to them by the third parties up to the uninsured policy limits. In both cases, State Farm filed a motion for judgment on the pleadings arguing that its setoff provision absolved it from any obligation to indemnify plaintiffs. The motions were granted and plaintiffs appealed.

The appellate courts reversed in both cases. The appellate court below in *Hoglund* noted that the purpose behind the uninsured motorist statute is to compensate the insured for injuries caused by an uninsured motorist to the same extent as if the insured were injured by an insured motorist and that the setoff provision acts only to prevent double recovery by plaintiffs. Thus, because

State Farm had not contested the total amount of plaintiff's damages or alleged any double recovery by the plaintiff, she was held entitled to recover the $100,000 limit under her uninsured motorist policy. *Hoglund,* 211 Ill. App. 3d 600, 604.

The appellate court below in *Greenawalt* found that the uninsured motorist statute serves to place the "injured policyholder in substantially the same position" he would be in if the wrongful driver had insurance. The court there also determined that setoff would be proper only to prevent a double recovery of damages. However, if the plaintiff's damages actually exceeded the $100,000 already paid to her by the insured tortfeasor, the court held, it would be a violation of public policy to allow State Farm a setoff. Thus, because no determination of plaintiff's damages had been made, the court below remanded for such a finding. To the extent that the plaintiff's damages were in excess of $100,000, the court below held that she was entitled to "recover the difference between the $100,000 settlement and her assessed damages, up to the limits of the $100,000 uninsured motorist limitation." *Greenawalt,* 210 Ill. App. 3d 543, 550.

It is well-settled law that the purpose behind the statutorily mandated uninsured motorist provision is that the insured be placed in substantially the same position as if the wrongful uninsured driver had been minimally insured. *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 335.

Based on our review of the purpose of uninsured motorist coverage, we find that the meaning of the setoff provisions at issue both in the statute and in the policies in the instant cases is to prevent a double recovery by the insured.

Consider the case of Hoglund. Miss Hoglund, while riding as a passenger on an uninsured motorcycle, was

involved in a crash with an insured automobile and suffered $200,000 in damages. Both drivers were at fault for the injury. The automobile driver had insurance with a $100,000 limit, which was paid to Miss Hoglund. Although the driver of the motorcycle on which she was riding had no insurance, Miss Hoglund was covered by the uninsured motorist clause of her father's policy with State Farm which had a $100,000 limit for injury caused by an uninsured driver. She filed a claim with State Farm. State Farm, pointing to the setoff clause in the policy, denied any liability and asserted that the $100,000 which Miss Hoglund recovered from the other driver was a complete setoff to the $100,000 uninsured motorist coverage.

The relevant language of the policy says, in sum, that uninsured motorist coverage shall be reduced by any amount paid the insured by any other party. That is a literal interpretation of the policy language. Were our analysis to stop there, we would have to conclude that the position of State Farm is correct, and Miss Hoglund would get nothing under her father's policy. Our analysis, however, does not stop there.

We cannot ignore that a premium was paid for uninsured motorist protection. If that protection is not there, the policyholder has been denied substantial economic value in return for the premiums which have been paid. At the time coverage was purchased, Mr. Hoglund believed that he was purchasing uninsured motorist protection in the amount of $100,000. After his daughter's claim was filed, however, he was told there was no coverage. In other words, now you have insurance protection; now you don't. While the collection of insurance premiums is an important part of the insurance industry, it is not the only part. Insurers are also expected to honor claims under their policies for which premiums have been paid in good faith.

We believe that the exculpatory language on which State Farm relies cannot be read in isolation. Rather, it must be read in conjunction with the policyholder's reasonable expectations and it must also be read in conjunction with the public policy behind the uninsured motorist statute and the coverage intended by the insurance policy itself. Moreover, the setoff provision must be read with reference to the facts of the case at hand. When viewed in this way, a latent ambiguity in the policy language is disclosed. Black's Law Dictionary defines a latent ambiguity as a situation:

> "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." (Black's Law Dictionary 102 (3d ed. 1933).)

With reference to the policyholder's expectations, it is a fact that he paid a premium for $100,000 of uninsured motorist coverage and reasonably expected coverage for damages caused by an uninsured motorist up to that amount. With reference to the facts of the occurrence, it is significant that Miss Hoglund was injured in part by an uninsured motorist and in part by an insured motorist. Although she was paid $100,000 towards her $200,000 of damages by the insured motorist, nothing was paid to her on behalf of the uninsured motorist. The payment for the insured motorist's fault was paid without reference to the uninsured motorist. State Farm is claiming credit for money paid by another party for that fault, which is unrelated to the fault of the uninsured motorist.

We have previously noted that the public policy behind the uninsured motorist statute is to place the injured party in substantially the same position he would be in if the uninsured driver had been insured. (*Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4; *Glid-*

*den v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 335.) If the position of State Farm were to be adopted, however, this purpose would be frustrated. If, for instance, the uninsured motorcycle driver had been insured for $100,000, Miss Hoglund could have collected that sum in full from that driver's insurer, along with the $100,000 she collected from the other insured driver. The separate collections of $100,000 from each of the two culpable drivers would have fully compensated her for her $200,000 in damages. State Farm's position, however, is to insist that it receive a full setoff for the payment made on behalf of the insured driver. Such a result would violate the public policy behind the uninsured motorist statute that the injured party be placed in the same position as if the uninsured driver had been insured. Additionally, the insurance policies at issue were intended to provide coverage for damages caused by uninsured motorists. To allow a literal interpretation of the policy language would nullify the coverage intended by the policies. Further, to endorse State Farm's interpretation of the setoff provision would deny the policyholder substantial economic value in return for the payment of premiums. That is to say, the insured would be denied the very insurance protection against uninsured motorists for which he had paid premiums. Thus, because the setoff provision at issue is subject to a second reasonable interpretation when viewed in light of the above extrinsic evidence, the provision is ambiguous. Under Illinois law, any ambiguity in an insurance policy must be construed in favor of coverage for the insured. *Elkins*, 77 Ill. 2d at 390-91.

Therefore, we resolve the latent ambiguity in these setoff provisions in favor of coverage for the plaintiffs. We conclude that State Farm, under its policy provision and under the statute, is entitled to a setoff for uninsured motorist coverage only to the extent necessary to

prevent a double recovery. Such an interpretation is consistent with the holdings of other jurisdictions. *Raitt v. National Grange Mutual Insurance Co.* (N.H. 1971), 285 A.2d 799; *Harthcock v. State Farm Mutual Automobile Insurance Co.* (Miss. 1971), 248 So. 2d 456.

Accordingly, we affirm the judgments of the appellate court in No. 71713 (*Hoglund*) and No. 71714 (*Greenawalt*).

*Judgments affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.