AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v. STEVEN HINDE *et al.*, Defendants-Appellees.

Second District    No. 2—97—1220

Opinion filed January 22, 1999.

D. Kendall Griffith, Bruce L. Carmen, and Richard S. Porter, all of Hinshaw & Culbertson, of Chicago, for appellant.

Debra A. Delia, of Thomas D. Luchetti, P.C., of Rockford, for appellees.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, American Family Mutual Insurance Company (American Family), brought an action for declaratory judgment in the circuit court of Winnebago County against defendants, Steven Hinde, American Family's policyholder, and his son, John Hinde, (collectively Hinde) to determine whether American Family was required to arbitrate an underinsured motorist claim arising out of an accident occurring on June 22, 1991, in which John Hinde was struck and seriously injured by a car while crossing a street. Both parties moved for summary judgment. The court entered summary judgment in favor of Hinde, finding that the policy limits of the underinsured tortfeasor had been exhausted pursuant to a settlement with Hinde and that, therefore, American Family was required to arbitrate Hinde's underinsured motorist claim.

American Family appeals, contending that the trial court erred in ruling that the underinsured tortfeasor's policy had been exhausted by a settlement where a portion of the settlement funds was contributed by third-party defendants and a dramshop defendant in a companion case.

The following facts are taken from the record. On July 19, 1991, Hinde filed a personal injury claim against Timothy Estrada (Estrada), the operator of the car that struck John Hinde. Subsequently, Hinde

filed an action pursuant to the Dramshop Act (Ill. Rev. Stat. 1989, ch. 43, par. 135 (now 235 ILCS 5/6—21 (West 1996))) against the owners and operators of the tavern (collectively the dramshop) where Estrada had become intoxicated on the night of the accident. On October 14, 1992, Estrada filed a third-party action for contribution against Adam Hueckstaedt (Hueckstaedt) and Douglas Lyons (Lyons), two of the individuals crossing the street with John Hinde on the night of the accident. On January 20, 1994, all of these matters were consolidated.

A joint mediation of the consolidated cases occurred on February 24, 1995. Pursuant to the mediation, a memorandum of agreement was prepared and signed by representatives of all the parties. On March 1, 1995, and March 2, 1995, Estrada submitted to Hinde a written offer of $25,000, the bodily injury limits of liability under his insurance coverage. On March 6, 1995, Hinde's attorney, Thomas Laughlin, communicated the offer to American Family, indicating Hinde's intent to accept the monies and provide a release to Estrada unless American Family contacted Laughlin within 30 days to direct Hinde not to do so. This communication was sent to comply with section 143a—2(6) of the Illinois Insurance Code (215 ILCS 5/143a—2(6) (West 1992)), which allows an underinsured motorist's carrier to tender to its insured the amount of the proposed settlement between the underinsured tortfeasor and the insured so as to retain its subrogation rights against the underinsured tortfeasor. Laughlin also informed American Family that Hinde intended to provide releases to all parties, including the dramshop, whose contribution to the settlement was being arranged with Janet Lanpher, attorney for Estrada's insurance carrier.

Additionally, on that same date, Laughlin wrote to American Family to demand the balance of American Family's $100,000 underinsured policy limits. On April 6, 1995, American Family sent a letter to Laughlin but provided no direct response regarding the $25,000 offer Hinde had received. Laughlin wrote American Family on April 18, 1995, again communicating the offer to American Family, and informed American Family that Hinde would wait another 30 days before accepting the offer. American Family did not respond to this correspondence.

On June 6, 1995, Hinde accepted the $25,000 offer. The offer was apportioned as follows: $16,500 from Estrada, $1,000 from third-party defendant Lyons, $2,500 from third-party defendant Hueckstaedt, and $5,000 from Estrada by the dramshop. On or about June 14, 1995, Lanpher informed Laughlin that she was experiencing difficulties in obtaining the contribution payments from the third-party defendants. According to Lanpher, Estrada's insurance carrier would not issue the

$25,000 settlement until the third-party defendants and the dramshop had made their payments to the carrier. Lanpher agreed to allow Laughlin to collect the funds from the third-party defendants and from the dramshop on behalf of Estrada. In a letter dated June 16, 1995, to Lanpher and copied to counsel for the third-party defendants and the dramshop, Laughlin informed Lanpher that he was asking counsel for the other parties to the settlement to forward their settlement drafts directly to him. Additionally, Laughlin asked Lanpher to order the settlement draft from Estrada's insurer.

On July 16, 1995, Lanpher submitted a settlement check by correspondence in the amount of $16,500 from Estrada's insurance carrier. Lyons and Hueckstaedt were delayed in providing their funds until Estrada executed releases. On August 22, 1995, the dramshop submitted its settlement check by correspondence. The final funds were received and dispersed on or about September 29, 1995.

Hinde had commenced his claim for underinsured motorist coverage from American Family in June 1995. Both Hinde and American Family conducted discovery and prepared for arbitration of his claim. In a letter dated August 5, 1996, American Family informed Hinde that it "has come to our attention" that the $25,000 limits of Estrada's policy have not been exhausted, since Estrada paid only $16,500 of the $25,000 settlement and the third-party defendants and the dramshop paid the remainder. American Family pointed out that the underinsured motorist endorsement of Hinde's insurance policy required exhaustion before the underinsured motorist coverage would apply. That endorsement provided:

> "We will pay under this coverage only after the limits of liability under all bodily injury liability insurance policies applicable to the underinsured motor vehicle and its operator have been exhausted by payment of judgements or settlements."

American Family stated that since Estrada's policy limits had not been exhausted, it did not intend to participate in an arbitration of Hinde's claim. Instead, according to the letter, American Family intended to file a complaint for declaratory judgment. On September 3, 1996, American Family filed its complaint, seeking a declaration that it owed no underinsured motorist coverage to Hinde and, therefore, had no duty to arbitrate Hinde's claim. Based upon these assertions, American Family moved for summary judgment.

Hinde filed a response and a cross-motion for summary judgment, contending that whether the settlement payment was made piecemeal or jointly through Estrada, the $25,000 settlement satisfied the exhaustion clause of the policy. Hinde also contended that recent amendments to the Illinois Insurance Code, allowing an underinsured

tortfeasor's policy limits to be exhausted by settlement for less than the full amount, were procedural and, therefore, should apply to the settlement. Further, Hinde argued that the equitable defenses of waiver, estoppel, and *laches* barred American Family from asserting that the exhaustion clause had not been satisfied.

The court found that the payments made pursuant to the settlement satisfied the exhaustion clause and that the sources of the payments were irrelevant as long as the bodily injury limits of the underinsured tortfeasor's policy were met, as had occurred in the present case. The court did not address Hinde's statutory amendment argument but did find that the amendment did not apply in the instant case. The court also did not address Hinde's equitable contentions. Thereafter, American Family filed a timely notice of appeal.

On appeal, American Family contends that the trial court erred in granting summary judgment in favor of Hinde. Based on its interpretation of its policy language, American Family maintains that Estrada's $25,000 bodily injury limits of liability under the terms of his insurance policy were not exhausted by settlement, since Estrada's insurer only paid $16,500 of its own funds to obtain a release from Hinde.

■ A trial court properly grants summary judgment when the pleadings, depositions, and admissions on file, together with the affidavits, if any, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *Burse v. CR Industries, Inc.*, 288 Ill. App. 3d 48, 52 (1997). Our review of the trial court's decision to grant summary judgment is *de novo*. *Harris Bank v. City of Geneva*, 278 Ill. App. 3d 738, 741 (1996).

The underinsured motorist coverage endorsement upon which American Family relied to deny Hinde recovery for injuries he sustained on June 22, 1991, provides as follows:

> "We will pay under this coverage only after the limits of liability under all bodily injury liability insurance policies applicable to the underinsured motor vehicle and its operator have been exhausted by payment of judgements or settlements."

This provision paralleled section 143a—2(7) of the Illinois Insurance Code (Code) (215 ILCS 5/143a—2(7) (West 1992)), which was in force at the time of the occurrence.

■ Pursuant to American Family's interpretation of its endorsement, American Family's coverage did not apply until the bodily injury limits of Estrada's liability insurer had been paid out, or exhausted, by

that insurer. American Family relies on the term "exhausted" to argue that the $16,500 payment by Estrada's insurance carrier demonstrates that it did not exhaust its $25,000 bodily injury limits. We do not agree and find a latent ambiguity exists in the language of the exhaustion clause. A latent ambiguity "does not appear on the face of language used or an instrument being considered" but "arises when language is clear and intelligible and suggests but a single meaning, but some extrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings." Black's Law Dictionary 883 (6th ed. 1990); see also *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 279 (1992).

Initially, we note that following the enactment of section 143a—2(7) of the Code pertaining to underinsured motorist coverage only one opinion, *Lemna v. United Services Automobile Ass'n*, 273 Ill. App. 3d 90 (1995), addressed the application of an exhaustion provision in a policy providing underinsured motorist coverage. However, we do not consider that opinion instructive in analyzing the issue presented in the instant case because in *Lemna* the insured made an underinsured claim against his insurer prior to receiving *any* benefits from the underinsured tortfeasor's insurer. Such was not the case here, where the insured received benefits but a disagreement arose as to whether those benefits exhausted the bodily injury liability limits of the tortfeasor's insurance policy.

■ When construing insurance policies, the policy should be enforced as written unless the policy provision in question is ambiguous or contravenes public policy. *Pahn v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 343, 345 (1997). In determining whether there is an ambiguity, the provision in question cannot be read in isolation but must be read with reference to the facts of the case at hand. *Hoglund*, 148 Ill. 2d at 279; *Gibbs v. Madison Mutual Insurance Co.*, 242 Ill. App. 3d 147, 152 (1993). It also must be read in conjunction with the policyholder's reasonable expectations and the coverage intended by the insurance policy. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 485 (1997). The touchstone in determining whether an ambiguity exists regarding an insurance policy is whether the relevant portion is subject to more than one reasonable interpretation. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993). Any ambiguity in an insurance policy must be construed in favor of coverage for the insured. *Hoglund*, 148 Ill. 2d at 280.

■ The public policy behind the underinsured motorist coverage was to place the insured in the same position he would have occupied

if the underinsured tortfeasor had carried adequate insurance. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). In the present case, Hinde paid a premium for $100,000 of underinsured motorist coverage and, in so doing, reasonably expected that he had purchased underinsured motorist protection up to that amount. If we adopt American Family's interpretation of the exhaustion clause, then the underinsured motorist protection Hinde contracted for no longer becomes available to him. In effect, Hinde would be denied substantial economic value in return for the premiums he has paid. See *Cummins*, 178 Ill. 2d at 485.

■ However, the facts of this case demonstrate that Hinde should not be barred from recovery because the exhaustion clause is subject to more than one interpretation. Hinde received a settlement equal to the $25,000 bodily injury limits of Estrada's insurance policy. Although he received the $25,000 settlement monies in piecemeal fashion, it was the intention of all the parties, as evidenced in the written memorandum of the mediation agreement reached on February 24, 1995, that the $25,000 settlement represented Estrada's policy limits. As Hinde points out, the mediation agreement does not offer funds from the third-party defendants, Hueckstaedt and Lyons, or the dramshop to Hinde, and Hinde never accepted any such offers. Rather, the memorandum of agreement states that Estrada "will offer policy limits of $25,000 to John Hinde." That offer was tendered twice, in writing, by Lanpher, the attorney for Estrada's insurer, to Laughlin, Hinde's attorney.

Laughlin, in turn, informed American Family by written correspondence dated March 6, 1995, that Lanpher, acting on behalf of Estrada's insurer, had "tendered the liability of limits of $25,000." In this same letter Laughlin also informed American Family that the dramshop was contributing to the $25,000 settlement. On April 6, 1995, American Family sent a letter to Laughlin, which included no response or comment regarding the $25,000 offer by Estrada's insurer or the fact that the dramshop was contributing to it.

On April 18, 1995, Laughlin wrote American Family, again informing it that Estrada's policy liability limits of $25,000 had been tendered to Hinde. Laughlin wrote that he would wait another 30 days before accepting the tender on Hinde's behalf so that American Family could direct Laughlin not to accept the offer if it intended to exercise its subrogation right. American Family did not respond, and on June 6, 1995, Laughlin accepted the offer on behalf of Hinde and asked that a draft be issued to his client.

The full and final release indicates that the $25,000 was to be made up of $16,500 from Estrada, $1,000 from Lyons, $2,500 from

Hueckstaedt, and $5,000 "from Timothy Estrada by State Street Station [the dramshop]." In his affidavit attached to Hinde's response to American Family's motion for summary judgment and Hinde's cross-motion for summary judgment, Laughlin stated that he "made no negotiation" with counsel for Hueckstaedt or Lyons during the course of the mediation session and that Estrada's representative (Lanpher) negotiated their contributions. Additionally, Laughlin stated that during the course of the mediation the dramshop agreed to pay $5,000 towards Estrada's obligation.

Pursuant to a telephone conversation on or about June 14, 1995, Laughlin learned that Lanpher was experiencing difficulties in obtaining the payments from the other parties and that Estrada's insurance carrier would not issue the $25,000 settlement until it had received the payments of the third-party defendants and the dramshop. The difficulties Lanpher was experiencing in collecting the payments appeared to be based on a number of different factors as set forth in Laughlin's affidavit and in the affidavit of Lyons's attorney, Jack Cook. Those factors included Lyons's inability to pay $1,000 at the time Lanpher was attempting to coordinate the payments; the serious illness, including hospitalization for chemotherapy treatment, of the dramshop's attorney; and Estrada's delay in executing releases to Hueckstaedt and Lyons. As a result of these difficulties, Laughlin offered to contact the other parties to the settlement and ask them to forward their payments directly to him. Lanpher agreed to allow Laughlin to collect the funds from Hueckstaedt, Lyons, and the dramshop on behalf of Estrada. In a letter dated June 16, 1995, and copied to the attorneys for the third-party defendants and the dramshop, Laughlin communicated his willingness to collect the payments. Laughlin asked these parties and Lanpher to forward their payments to him.

The contents of the aforementioned correspondence, of the memorandum of the mediation agreement, and of the full and final release reflect that Estrada's insurer was offering Hinde the $25,000 policy limits and that it was the intention of all parties that the dramshop, Hueckstaedt, and Lyons would make their payments to Estrada's insurer, which, in turn, would issue a check in the amount of $25,000, Estrada's policy limits, to Hinde.

American Family emphasizes form over substance when it points to the fact that, because the third-party defendants, the dramshop, and Estrada's insurer issued separate checks to Hinde in the particular amount that each had agreed to contribute at the mediation session, the $25,000 bodily limits of Estrada's policy have not been exhausted. The exhaustion clause indicates that the bodily injury limits of liability under all policies applicable to an underinsured mo-

tor vehicle and its operator must be exhausted "by payment of judgements or settlements" before American Family will pay under the underinsured coverage purchased by an insured. However, the source of payment is not identified in the exhaustion clause. Also, the term "settlement," as evidenced from this case, does not necessarily or exclusively contemplate that just the policyholder and the insurer will be involved in the settlement.

When viewed in the light of the above extrinsic evidence, the exhaustion clause in American Family's policy is subject to a second reasonable interpretation other than the one propounded by American Family. That second interpretation is that the monies equaling the policy limits can include payments from other parties involved in the settlement besides the tortfeasor's liability insurer as long as the policy limits are tendered to American Family's insured. Thus, a latent ambiguity exists in the language of the exhaustion clause.

Because the exhaustion clause can be interpreted in more than one way, the provision must be construed in favor of the insured. *Hoglund*, 148 Ill. 2d at 280. We find, therefore, that the payments received by Hinde and totaling $25,000 satisfied American Family's exhaustion clause and that Hinde was entitled to proceed to arbitration with American Family regarding his underinsured motorist claim.

Accordingly, for the reasons stated, we affirm the order of the circuit court of Winnebago County granting summary judgment in favor of Hinde.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.