2023 IL App (1st) 210161-U

THIRD DIVISION
February 15, 2023

No. 1-21-0161

**NOTICE**:   This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE**
**APPELLATE COURT OF ILLINOIS**
**FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| ECHELON PROPERTY AND CASUALTY INSURANCE CO., | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Cook County |
| | ) |
| v. | ) No. 18 CH 997 |
| | ) |
| JUSTIN E. JONES, JOSEPH STRAYHORN, EAN HOLDINGS, LLC, a foreign corp., d/b/a ENTERPRISE RENT-A-CAR, JOHN DOE, an unknown lessee, AMERICAN ALLIANCE CASUALTY CO., EAGLE LIVERY SERVICE, INC., and METROPOLITAN INSURANCE SERVICE CONSULTANTS, INC., | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants, | ) |
| | ) Honorable |
| (Joseph Strayhorn, | ) Franklin U. Valderrama |
| | ) Allen Price Walker, |
| Defendant-Appellant.) | ) Judges, presiding. |

JUSTICE DEBRA B. WALKER delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred with the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's grant of summary judgment for plaintiff where plaintiff's insured rejected supplemental uninsured/underinsured motor vehicle coverage and, as a result, the other vehicle in the accident was not an underinsured motor vehicle under plaintiff's policy.

¶ 2 Defendant Joseph Strayhorn appeals the trial court's grant of summary judgment in favor of plaintiff Echelon Property and Casualty Insurance Company (Echelon), on Echelon's complaint for declaratory judgment. On appeal, Strayhorn contends that the court erred in granting summary judgment where (1) the insured did not reject uninsured/underinsured motor vehicle coverage at the higher bodily injury liability limits before Echelon's policy was issued; and (2) the other driver was an uninsured motorist because his insurance company refused to provide coverage for the accident. Strayhorn also contends that the trial court should have considered whether Echelon could set off the amount of his settlement with EAN Holdings, LLC/ d/b/a Enterprise Rent-A-Car (Enterprise) against any recovery under its policy. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4 On January 25, 2016, Strayhorn was driving on Interstate 290 for Eagle Livery Service, Inc. (Eagle) when he was struck from behind by a 2016 Chevrolet Cruze driven by Justin Jones. The Cruze was owned by Enterprise and leased to Kimberly Kelly. Kelly did not list Jones as an authorized driver of the Cruze, and she did not purchase additional insurance for the vehicle.

¶ 5 On January 25, 2018, Strayhorn filed a complaint against Jones, Enterprise, and John Doe "an unknown lessee," seeking damages and costs related to the accident. Strayhorn later discovered Kelly's identity as the lessee of the Cruze.

¶ 6 Kelly was insured by a $25,000 policy from American Alliance Casualty Company (AACC), and Jones was covered under that policy. AACC filed a complaint for declaratory judgment regarding its coverage for the accident. The chancery court subsequently found that AACC had no duty to defend or indemnify Jones and Kelly because they refused to make themselves available for an examination under oath, thus hindering AACC's investigation.

¶ 7    Enterprise, the owner of the Cruze, was bonded in Illinois with a limit of $100,000 for its liability in the accident. During settlement discussions with Strayhorn, Enterprise referred to AACC's coverage limit of $25,000 for the accident. Enterprise concluded that as a result of AACC's coverage, Enterprise's "exposure" would be $75,000. On June 4, 2018, Strayhorn and Enterprise entered into a settlement agreement providing that for a $75,000 payment, Strayhorn would "acquit and forever discharge" Enterprise "from any and all claims" resulting from the accident on January 25, 2016.

¶ 8    Strayhorn's vehicle was insured by an Echelon commercial lines policy purchased by Eagle. The policy provided coverage for all sums the insured must pay as damages because of bodily injury or property damage. The bodily injury limit of the policy was $350,000. Strayhorn filed a complaint for declaratory relief against Echelon and a motion to enforce arbitration under the uninsured/underinsured motor vehicle provision of the policy.

¶ 9    On July 10, 2018, Echelon filed a complaint for declaratory judgment against Jones, Strayhorn, Kelly, AACC, Eagle, and Metropolitan Insurance Service Consultants, Inc. (Metropolitan).[1] Echelon alleged that when Eagle applied for insurance, Faheem Ansari, Eagle's president, rejected uninsured/underinsured motorist coverage at limits equal to bodily injury limits. Instead, he selected a limit of $100,000. The rejection was recorded on the "Illinois Auto Supplement."

¶ 10    The Supplement stated that in Illinois, "all automobile liability policies [must] contain uninsured motorists and underinsured motorists bodily injury coverage in limits equal to your

---

[1] Metropolitan had submitted Eagle's insurance application to Echelon. Metropolitan was voluntarily dismissed as a defendant on November 19, 2018.

bodily injury liability coverage. You may reject these limits and select limits lower than the bodily injury liability coverage." It then instructed the applicant to "indicate by initialing below whether you desire coverage at limits lower than the bodily injury liability limits of your policy."

¶ 11    Ansari initialed and marked that he wished to reject the limits equal to bodily injury liability limits, and initialed and marked that he selected a $100,000 limit for uninsured/underinsured motorist coverage. Ansari signed at the bottom of the page, but the Supplement was not dated. Echelon argued that it was "entitled to a setoff of at least $100,000" because Enterprise, the owner of the Cruze, also provided coverage for the accident "in the amount of $100,000." Therefore, Strayhorn could not recover "any amounts" for the accident.

¶ 12    Strayhorn's complaint for declaratory judgment was consolidated with Echelon's complaint. On May 20, 2019, Strayhorn voluntarily dismissed his complaint and proceedings continued on Echelon's declaratory judgment action.

¶ 13    On June 17, 2019, Strayhorn filed a motion for summary judgment. Therein, he alleged that the undated Supplement signed by Ansari was ineffective. Strayhorn argued that without a date on the Supplement, Echelon cannot "show that the application and the Supplement were executed at the same time." As a result, the uninsured/underinsured motorist coverage was not $100,000, but instead was "in an amount equal to the bodily injury liability limits," or $350,000. Strayhorn also argued that his settlement with Enterprise should not offset Echelon's liability because the settlement related to Enterprise's duty of care, and Enterprise's liability regarding the accident was distinct from Jones' liability.

¶ 14    Echelon filed a cross-motion for summary judgment reiterating the arguments asserted in its complaint. Echelon also argued that underinsured motorist coverage was unavailable to

Strayhorn because the vehicle driven by Jones was not an underinsured motor vehicle. Echelon attached the affidavits of Daniel Behling and Jory Gruenberg to its motion.

¶ 15    Behling, the litigation manager at Echelon, stated that Eagle's application for insurance included the Supplement. Behling stated that the Supplement "was submitted to Echelon along with and at the same time as the rest of the Application on February 19, 2015." Gruenberg, president of Metropolitan, stated that Metropolitan served as Eagle's agent in procuring the Echelon policy. Gruenberg stated that the insurance application included the Supplement, and the Supplement was submitted to Echelon with the application. He further asserted that the executed Supplement was submitted prior to Echelon issuing the policy.

¶ 16    The trial court denied Strayhorn's motion for summary judgment and granted Echelon's cross-motion for summary judgment. The court further found that because Jones was not an underinsured motorist under the Echelon policy, it need not address the settlement setoff issue. Strayhorn filed a motion to reconsider, which the court denied. Strayhorn filed this appeal.

¶ 17                                II. ANALYSIS

¶ 18    Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). In filing cross-motions for summary judgment, the parties agree that there are no genuine issues of material fact and invite the court to decide the issues based on the record. *Milwaukee Mutual Insurance Co. v. J. P Larsen, Inc.*, 2011 IL App (1st) 101316, ¶ 7. Although the parties concede that only a question of law is involved, we need not affirm summary judgment in favor of either party if we find a material issue of fact exists. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We

review the trial court's ruling on a motion for summary judgment *de novo*. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004).

¶ 19 On appeal, Strayhorn contends that Eagle did not comply with section 143a-2 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/143a-2 (West 2016)) in rejecting uninsured/underinsured motorist coverage limits equal to the policy's bodily injury limit. Therefore, the uninsured/underinsured coverage limit of the policy was $350,000, not $100,000. This issue requires us to interpret the Insurance Code. When construing a statute, we must ascertain and effectuate the legislature's intent. *Rogers v. Imeri*, 2013 IL 115860, ¶ 13. The best indicator of legislative intent is the express language of the statute, given its plain and ordinary meaning. *Id.* Our standard of review on issues of statutory construction is also *de novo*. *McVey v. M.L.K. Enterprises, LLC*, 2015 IL 118143, ¶ 11.

¶ 20 Section 143a-2 provides:

"(1) No policy insuring against loss resulting from liability imposed by law for bodily injury or death *** shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle *** unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits *unless specifically rejected by the insured as provided in paragraph (2) of this Section*.

* * *

(2) Any named insured or applicant may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code by making a written request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a written rejection of limits in excess of those required by law." (Emphasis

added.) 215 ILCS 5/143a-2(1), (2) (West 2016).

¶ 21    Echelon issued its policy to Eagle with $100,000 coverage for uninsured/underinsured motor vehicles, instead of the $350,000 bodily injury limit. According to the plain language of section 143a-2, Echelon can only issue such a policy if the insured submitted a written rejection of the higher limit before the policy was issued. See *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 51-52 (2003). If Echelon cannot show that Eagle rejected the additional coverage pursuant to section 143a-2, the policy must be reformed to indicate uninsured/underinsured motorist coverage at the higher bodily injury limits. *Id*.

¶ 22    Strayhorn does not dispute that Ansari, Eagle's president, signed the Supplement and selected $100,000 as the limit for uninsured/underinsured motorist coverage. "[A] party to an agreement is charged with knowledge of and assent to the agreement signed." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150 (2006). As such, Eagle knowingly submitted a written rejection of uninsured/underinsured motorist coverage equal to the bodily injury limits as required by the statute. Strayhorn argues, however, that because the Supplement was undated, there is no evidence Ansari rejected the additional coverage before Echelon issued the policy.

¶ 23    Eagle's application for insurance was dated February 19, 2015, and the record shows Echelon issued its policy on that date. Although the Supplement was not dated, two affidavits attached to Echelon's cross-motion for summary judgment addressed that issue. Behling, the litigation manager at Echelon, stated that the Supplement was submitted "along with and at the same time as the rest of the Application on February 19, 2015." Gruenberg, president of the agency that procured the policy for Eagle, confirmed that the insurance application included the Supplement. Importantly, Gruenberg also stated that the executed Supplement was submitted prior to Echelon issuing the policy. These affidavits established that the executed Supplement was

submitted prior to issuance of the policy, and no counter-affidavits contradicted these statements. Facts contained in an affidavit attached to a motion for summary judgment that are not contradicted by a counter-affidavit must be taken as true for purposes of the motion. *CitiMortgage, Inc. v. Sconyers*, 2014 IL App (1st) 130023, ¶ 9.

¶ 24    Strayhorn argues that this court cannot consider the affidavits because they are extrinsic evidence. We agree that courts cannot look to extrinsic evidence when interpreting a facially unambiguous insurance policy. See *Vivify Construction, LLC v. Nautilus Insurance Co.*, 2017 IL App (1st) 170192, ¶ 20. Here, however, we are not construing the provisions of Echelon's policy. We are determining whether Eagle rejected additional uninsured/underinsured motorist coverage pursuant to the Code, and whether the trial court's grant of summary judgment was therefore proper. In reviewing the court's grant of summary judgment, we can consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Taking Behling's and Gruenberg's statements as true, as we must, we find that Eagle rejected the additional coverage before Echelon issued the policy. Accordingly, the policy provided $100,000, not $350,000, in uninsured/underinsured motorist coverage. We address the remaining contentions on appeal with that limit in mind.

¶ 25    Strayhorn first contends that Jones was an uninsured motorist under the provisions of Echelon's policy. The rules applicable to contract interpretation also govern our interpretation of an insurance policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Our primary objective is to ascertain and give effect to the parties' intent as expressed in the agreement. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). If the policy terms are clear and unambiguous, we will enforce them as written unless doing so would violate public policy. *Id.* To determine the parties' intent, we construe the policy as a whole, considering the type of

insurance for which the parties have contracted, as well as the subject matter insured and the purposes of the policy. *Old Second National Bank v. Indiana Insurance Co.*, 2015 IL App (1st) 140265, ¶ 19. The interpretation of a policy provision is a question of law we review *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 26    Echelon's policy provides that:

"We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' *** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.'

* * *

'Uninsured motor vehicle' means a land motor vehicle or 'trailer':

a. For which no liability bond or policy at the time of an 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged; or

b. For which an insuring or bonding company denies coverage or is or becomes insolvent;"

¶ 27    Referencing definition (b), Strayhorn argues that Jones was effectively an uninsured motorist under the policy because AACC, Jones' insurer, had no duty to defend or indemnify him in the accident. We disagree. In our review of the provision, it is clear that the denial of coverage in (b) applies to a "land motor vehicle," not to the driver. Nothing in the record indicates that coverage for the Cruze was denied. In fact, Enterprise settled with Strayhorn for $75,000 based on coverage applicable to the Cruze. Under the plain language of the policy, Jones, the driver of the Cruze, was not an uninsured motorist.

¶ 28    Nor was Jones an underinsured motorist. The Echelon policy provides coverage for compensatory damages an insured is entitled to recover from the owner or driver of an "underinsured motor vehicle." An underinsured motor vehicle is defined as:

> "a land motor vehicle or 'trailer' for which the sum of all liability bonds or policies at the time of an 'accident' provides at least the amounts required by the applicable law where the covered 'auto' is principally garaged but that sum is *** less than the Limit of Insurance of this coverage ***."

¶ 29    As we have found, Eagle rejected underinsurance coverage at the bodily injury limits of $350,000 and selected a coverage limit of $100,000. The Cruze was also covered up to $100,000 at the time of the accident. As the amount of coverage for the Cruze was the same as the amount of coverage Echelon's policy provided for underinsured motorists, the Cruze was not an "underinsured motor vehicle." The setoff provision applied to settlement agreements with the "owner or operator of an 'underinsured motor vehicle.' " Since the Cruze was not underinsured, we need not consider whether Echelon should be allowed to set off the $75,000 settlement Strayhorn received from Enterprise.

¶ 30    Strayhorn contends that as a public policy matter, Echelon's policy should cover Jones' liability for the accident. He argues that the accident involved two tortfeasors, and the public policy of Illinois is to place the injured party in the same position as if each tortfeasor had coverage equal to the limits of Echelon's policy. Here, the trial court "failed to separate Enterprise and Jones/Kelly" as distinct tortfeasors. Therefore, Strayhorn received payment from only one tortfeasor when he should have received payments from both. He argues that if Echelon's policy explicitly precluded such recovery, that provision was unenforceable as against public policy. As support, he cites *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272 (1992),

*Allstate Property and Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, and *Farmer's Automobile Insurance Ass'n v. Coulson*, 402 Ill. App. 3d 779 (2010).

¶ 31    In *Hoglund*, the plaintiff was a passenger on an uninsured motorcycle that collided with an insured vehicle. Both drivers were at fault. *Hoglund*, 148 Ill. 2d at 274. The driver of the insured vehicle paid the plaintiff $100,000, which was the limit of their policy. The plaintiff alleged damages in excess of $100,000, so she sought uninsured motorist benefits under her own policy. Her policy limit was also $100,000. *Id.* The plaintiff's insurer, State Farm, denied her claim because under the terms of its policy, State Farm set off the $100,000 she received from the insured driver. *Id.*

¶ 32    The supreme court found, however, that although State Farm's setoff followed the clear language of the policy, it allowed State Farm to claim credit "for money paid by another party *** which [was] unrelated to the fault of the uninsured motorist." *Id.* at 279. This interpretation of the setoff provision would negate the public policy underlying the uninsured motorist statute to place the injured party in substantially the same position as if the uninsured driver had been minimally insured. *Id.* If both drivers had been insured, the plaintiff would have collected separate payments of $100,000 "from each of the two culpable drivers." *Id.* at 280. Therefore, "a literal interpretation of the policy language would nullify the coverage intended by the policies." *Id.*

¶ 33    In *Trujillo*, the plaintiff was a passenger in an insured vehicle that was involved in an accident with an underinsured vehicle. *Trujillo*, 2014 IL App (1st) 123419, ¶ 6. Both drivers were at fault, and the plaintiff received $20,000, which was the limit of the other driver's policy, and $100,000, the bodily injury limit of her driver's policy with Allstate. *Id.* ¶ 6. Allstate's policy also had $100,000 in underinsured motorist coverage and the plaintiff filed a claim to recover underinsured motorist benefits under the policy. However, Allstate informed her that the

underinsured motorist coverage was reduced to zero by the $100,000 payment made pursuant to its bodily injury coverage. *Id.* ¶ 7.

¶ 34     The plaintiff argued that Allstate's setoff provision violated public policy regarding the underinsured motorist statute. *Id.* ¶ 18. This court agreed, noting that the accident resulted from two distinct faults: that of the plaintiff's insured driver, for which Allstate paid $100,000, and that of the other driver who was underinsured. *Id.* ¶ 42. Following *Hoglund*, we found that the plaintiff may recover up to $80,000 from the underinsured motorist limit of Allstate's policy if she proves her damages exceeded the amount she already received. *Id.* ¶¶ 43-44.

¶ 35     Unlike *Hoglund* and *Trujillo*, the accident in this case did not involve an uninsured or underinsured motor vehicle. Furthermore, Strayhorn was not a passenger in a vehicle involved in the accident. There were not two drivers, with distinct liabilities for the accident, from whom Strayhorn could recover insurance benefits. *Hoglund* and *Trujillo* are distinguishable.

¶ 36     *Coulson* did not involve a traffic accident between two vehicles. Instead, the claimant, Kassandra Coulson, was injured when a vehicle crashed through the window of a Subway restaurant and struck her as she dined. *Coulson*, 402 Ill. App. 3d at 779. The tortfeasors were the driver of the vehicle, and the property owner and franchisee of the restaurant. *Id.* Coulson alleged damages in excess of $900,000. *Id.* The driver had a $50,000 policy which paid $24,000 to Coulson and $26,000 to other injured patrons. *Id.* Coulson also received $410,000 from the property owner in a settlement. *Id.* at 780.

¶ 37     Coulson was covered by a Farmers automobile insurance policy that provided uninsured/underinsured motorist coverage of $300,000 per person. *Id.* She made a demand for underinsured benefits under the policy, but Farmers declined because it set off the total payments Coulson received, $434,000, against its policy limit of $300,000. *Id.*

¶ 38 This court found that while a literal interpretation of Farmers' policy allowed the setoff, Farmers' deduction of the amounts paid by the property owner "would frustrate the public policy of placing Coulson in the same position as if [the driver] had been fully insured." *Id.* at 783. The property owner was not an underinsured motorist, and its liability for the accident was "totally independent" from the underinsured motorist's liability. *Id.* at 784. "[T]o allow Farmers to deduct the amounts paid that [were] totally unrelated to the UIM would deny Coulson the very protection against UIMs for which her stepfather paid premiums." *Id.* Pursuant to the Code, the only amount deductible from the underinsured motorist coverage was the $24,000 paid "on behalf of the underinsured motor vehicle." *Id.* at 786. Farmers' setoff of the entire $434,000 Coulson received was therefore improper. *Id.*

¶ 39 Unlike the motorist in *Coulson*, Jones was not the driver of an underinsured motor vehicle. Therefore, the public policy underlying uninsured/underinsured motorist coverage in Illinois was not implicated here. Another significant distinction in *Coulson* was that the other tortfeasor, the property owner, bore no responsibility for the negligent driving of the underinsured motorist.

¶ 40 In contrast, Illinois law recognizes that Enterprise bears some responsibility for accidents caused by the drivers of its vehicles. Our legislature enacted special financial responsibility provisions for owners of rental vehicles such as Enterprise. See 625 ILCS 5/9-101 (West 2016). Under the statute, Enterprise must provide "proof of professional responsibility" to the Secretary of State, which may be satisfied by filing a bond, procuring an insurance policy, or filing a certificate of self-insurance. *Nelson v. Artley*, 2015 IL 118058, ¶ 17. "The purpose of this requirement is to provide members of the public with some modicum of protection against negligent drivers" of rental vehicles. *Id.* ¶ 15. Accordingly, Enterprise's liability for the accident was not entirely independent from Jones' liability as the driver of its vehicle.

¶ 41    No genuine issue of material fact exists regarding the uninsured/underinsured motorist coverage limit of Echelon's policy, or whether Jones was an uninsured/underinsured motorist under the policy. Therefore, the trial court did not err in granting Echelon's cross-motion for summary judgment or denying Strayhorn's motion for summary judgment.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 44    Affirmed.